DANIEL, J.
In the ninth article of Judge Story’s work on Railment, is to be found the most concise and lucid exposition of the rights, duties and obligations of carriers of passengers, that I have met with. It is there stated, that carriers of passengers merely for hire, are subject to the same responsibility as carriers of goods for hire, at the common law, so far as respects the baggage of the passengers: But as to the persons of the passengers, a different rule prevails. Attempts have been made to extend their responsibility as to the persons of passengers, to all losses and injuries, except those arising from the act of God or from the public enemies. But the support of this doctrine has been uniformly resisted by the courts, although a strict responsibility as to the carriage of the persons of passengers is imposed upon such carriers. Section 590. In section 592, the author proceeds to state as the result of the decided cases, that carriers of persons by stage coaches are bound to provide coaches reasonably strong and sufficient for the journey', with suitable harness, trappings and equipments; and to make a proper examination thereof previous to each journey'. In other terms, that they [ *are bound to provide road-worthy vehicles suitable for the safe transportation of passengers: And if they fail in any of these particulars, and any damage or injury occur to the passengers, they' will be responsible to the full extent thereof. Hence (he says) it has been held that if there is any defect in the original construction of the stage coach, as for example in an axletree, although the defect be out of sight, and not discoverable upon a mere ordinary examination, yet, if the defect might be discovered by a more minute examination, and any damage is occasioned to a passenger thereby, the coach proprietors are answerable therefor.
In the next place, they are bound to provide careful drivers, of reasonable skill and good habits, for the journey; and to employ horses which are steady' and not vicious, or likely to endanger the safety' of their passengers. Section 593.
In the next place, they are bound not to overload the coach either with passengers or with luggage; and they are to take care that the weight is suitably' adjusted, so that the coach is not top-heavy and made liable to overset. Section 594.
They are bound to make, use of all the ordinary precautions for the safety of passengers on the road. The coachman must, in all cases, exercise a sound and reasonable discretion, in traveling on the road, to avoid dangers and difficulties. If he is guilty of rashness, negligence or misconduct, or if he shows any want of skill, the proprietors will be responsible for any injury resulting from his acts. Section 598.
The liabilities of such carriers naturally flow from their duties. As they are not, like common carriers of goods, insurers against all injuries, except by the act of God, or by public enemies, the enquiry is naturally presented, What is the nature and extent of their responsibility? It is certain that their undertaking is *not an undertaking absolutely to convey safely. But although they do not warrant the safety of the passengers, at all events; yet their, undertakng and liability go to the extent, that they and their agents possess competent skill, and that they will use all due care and diligence in the performance of their duty. But in what manner (the author asks) are we to measure this due care and diligence? Is it ordinary care and diligence, which will make them liable only for ordinary neglect? Or is it extraordinary care and diligence, which will render them liable for slight neglect? As they undertake for the carriage of human beings, whose lives and limbs and health are of great importance as well to the public as to themselves, the ordinary principle in criminal cases, where persons are made liable for personal wrongs and injuries arising from slight neglect, would seem (he says) to furnish the true analogy and rule. It has been accordingly held that passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go, that is, for the utmost care and diligence of very cautious persons, and of course they are responsible for any even the slightest neglect. Section 601.
In section 601 a, the further proposition *360 is stated, that when injury or damage happens to the passengers by the breaking down or overturning of the coach, or by any other accident occurring on the ground, the presumption prima facie is, that it occurred by the negligence of the coachman; and the onus probandi is on the proprietors of the coach to establish that there has been no negligence whatsoever; and that the damage or injury has been occasioned by inevitable casualty, or by some cause which human care and foresight could not prevent. For the law will, in tenderness to human life and limbs, hold the proprietors liable for the slightest negligence, and will compel them to repel, by satisfactory proofs, every imputation thereof.
*This summary of the law seems to me to comprehend and to affirm all the propositions involved in the instructions given at the instance of the defendant in error.
The plaintiff in error, in his petition, denies the propriety of each of these instructions, but neither in the notes of his counsel accompanying the petition, nor in the argument here, has any serious effort been made to show by argument or authority, that the instructions have fathed to propound the law correctly, except in two particulars. In order to determine whether the instructions have erred in either of these particulars, a more special notice of the law, in relation to them, would seem to be rendered proper.
In the first place it is urged, ¿that carriers of persons are responsible for no more than ordinary neglect; and that as the instructions lay down a rule which imputes liability for a less degree of negligence than that which constitutes ordinary neglect, they have in such particular stated the law too strongly against the plaintiff in error. In support of this objection the authority mainly relied upon is the case of Boyce v. Anderson, £ Peters’ R. 150. That case does, I think, decide the law as the counsel' for the plaintiff states it; but in the case of Stokes v. Saltonstall, 13 Peters’ R. 181, it has been substantially, if not in terms, overruled.
Justice Barbour, in Stokes v. Saltonstall, in reviewing the decision in Boyce v. Anderson, says, “that was an action brought by the owner of slaves against the proprietors of a steamboat on the Mississippi, to recover damages for the loss of the slaves, alleged to have been caused by the negligence or mismanagement of the captain and commandant of the boat. The court distinguished slaves, being human beings, from goods; and held that the doctrine as to the liability of common carriers for mere goods, did not apply to them; but that in respect to them, the carrier was responsible only for ordinary neglect. The court seem to have ^considered that case as being a sort of intermediate one between goods and passengers. We think, therefore, that anything said in that case in the reasoning of the court, must be confined in its application to that case ; and does not affect the principle which we have before laid down.” And in a preceding portion of the opinion, the general principle is asserted, that though a carrier of passengers “does not warrant the safety of the passengers, at all events, yet his undertaking and liability as to them goes to this extent: that he, or his agent, if, as in this case, he acts by agent, shall possess competent skill; and that as far as human care and foresight can go he will transport them safely;” and the case of Aston v. Heaven, 2Esp. R. 533, is cited with approbation, in which it is held that whilst the action stands on the ground of negligence, yet the responsibility attaches to the smallest negligence.
And in Jackson v. Tollett, 3 Eng. C. L. R. 233, Lord Ellenborough states the law to be, that “every person who contracts for the conveyance of others, is bound to use the utmost care and skill; and if through any erroneous judgment on his part any mischief is occasioned, he must answer for the consequences.”
The case of Crofts v. Waterhouse, 11 Eng. C. L. R. 119, is substantially to the same effect. So in Hall v. Conn. River Steamboat Co., 13 Conn. R. 319, the court held that whilst the rule applicable to carriers of goods had not been applied in its fullest extent to carriers of persons, because they have not the same absolute control over passengers that they have over goods entrusted to their care; yet that both policy and the authority of adjudged cases require great care and skillful management in the transportation of passengers by common carriers. They said it was but right it should be so; that those, upon whose skill and careful management, not unfrequently, depend the lives and safety of others, should feel themselves responsible for any *want of care or faithfulness, and that they therefore fully approved the instruction given in the court below, that the defendants were bound to employ the highest degree of care that a reasonable man would use.
In Stockton v. Frey, 4 Gill. 406, and in Maury v. Talmadge, 2 McLean’s R. 157, and in Dewort v. Loomer, 21 Conn. R. 245, the same doctrine is maintained. And in the case of the Philadelphia and Reading R. R. Co. v. Derby, 14 How. S. C. R. 486, Justice Grier in delivering the opinion of the Supreme court uses the following strong and emphatic language: “When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. And whether the consideration for such transportation be pecuniary or otherwise, the personal safety of the passengers should not be left to the sport of chance, or the negligence of careless agents. Any negligence in such case may well deserve the epithet of “gross.” And in Angelí on the Eaw of Carriers, it is stated as the result of the decided cases, that “the degree of responsibility to which carriers of persons are subject, is not ordinary care, which will make them liable only for ordi *361 nary neglect, but extraordinary care, which renders them liable for slight neglect. It is the danger to the public which may proceed even from slight faults, unskillfulness or negligence of passenger carriers or their servants, and the helpless state in which passengers, by their conveyances, are, which have induced the courts, both in England and in America, to bind the rule of the contract locatio operis, much tighter than could be insisted for on the ordinary principle of that contract. The most inconsiderable departure, therefore, from the important duties imposed upon passenger carriers, will render them liable for the consequences. ” Indeed, I have seen no case except that of Boyce v. Anderson, which sanctions *the idea that the carrier is not responsible for slight neglect; and I feel no hesitation in approving the instructions of the judge in the particular rtnder considera ton.
The second error supposed to be committed by the judge below, in expounding the law to the jury, is to be found in the explanation accompanying the third instruction asked by the defendant in error. In the third instruction, it will have been seen, the judge instructed the jury that if they believed that the plaintiff was injured by the upsetting of the stage, and that the upsetting'was caused by the horses running off; that the horses ran off, not because they were accidentally frightened, but because the blocks were out of the brake, causing the stage to run upon them; and if the jury further believed that such running off of the horses might have been prevented, if the horses had been properly harnessed, or if the utmost care and diligence of a cautious person had been used, to secure the blocks in the brake; that the defendants were liable in damages. And the court accompanied this instruction by the remark to the jury, that in speaking of the horses being “properly harnessed,” the court was not to be understood as expressing any opinion whether the horses should have had breeching or not; for upon that subject he would express no opinion, leaving it entirely to the jury, as a question proper for their decision.
And the court afterwards, at the instance of the plaintiff in error, instructed the jury, that in the absence of any express or special contract, the proprietors of stage coaches for the transportation of passengers, are not bound to guarantee as to their coaches, harness and fixtures, more than that they shall be sound and complete of the kind used upon their line, and offered to the patronage of travelers. And that they cannot be charged with damages resulting, without '^negligence, from the non-adoption of another kind or style of conveyance, harness or fixtures. The defendant in error having offered the testimony of witnesses to show, that, since the introduction of the brake, it was not safe to trust to that as a means of checking the velocity of stages in descending hills, with harness that had no breeching; and the plaintiff having offered evidence to show that when the brake was used the breeching to the harness was of'no value as a means of safety; and that on his line, and on many other lines, the breeching had been abandoned as useless since the improvement of the brake had been introduced, it was, I think, evidently the purpose of the court, in the explanation given of the third instruction, to guard the jury against the impression, that in saying if the jury believed that the running off of the horses might have been prevented if the horses had been properly harnessed, &c., the plaintiffs in error were liable, the court intended to express the opinion that the failure to use breeching to the harness did of itself constitute neglect: whilst on the other hand the plaintiff in error was desirous of getting rid of the testimony offered by his adversary on that head by the instruction which he asked; the effect of which was to negative the conclusion in law, of any neglect in failing to use the breeching, though the jury should be of opinion, from the evidence that harness with breeching would be safer than harness without, provided they should also believe that the harness used was sound and complete, of the kind used, upon the line of the plaintiffs in error.
It is insisted by the counsel of the plaintiff in error, that there is an obvious conflict between the third instruction of the defendant in error as explained by the court, and the first instruction given at the instance of the plaintiff in error; that the latter properly confined the jury to the enquiry whether the harness was sound *and complete of the kind used on the line, whilst the former left the jury at liberty to impute neglect to the plaintiff in error in failing to use harness of a different kind.
The discrepancy between the two instructions complained of does, I think, exist; and it becomes necessary to enquire which of the two instructions is right. The question as to the liability of the carrier is presented in a peculiar and novel aspect; but it will on examination, I think, be found to fall within the influence of well settled and familiar principles.
I have already cited the authority of Judge Story to show that the carrier is bound to provide coaches reasons bly strong and sufficient for the journey, with suitable harness, trappings and equipments. And there are numerous cases stating the law the same way; and among others, Christie v. Griggs, 2 Camp. R. 79; Bremner v. Williams, 11 Eng. C. L. R. 437; Crofts v. Waterhouse, Ib. 119; Sharp v. Grey, 23 Eng. C. L. R 331; Stockton v. Frey, 4 Gill’s R. 406.
In the case of Ingalls v. Bills, 9 Metc. R. 1, the correctness of some of these decisions, so far as they go to declare the stage owner to be a warrantor of the soundness and sufficiency of the coach in all respects, is denied. And it was there held that when the accident arises from a hidden and internal defect which a careful and thorough examination would not disclose, and which *362 could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is not liable for the injury; but the misfortune must be borne by the sufferer. Yet the court at the same time said, that the carriers of passengers are bound to use the utmost care and diligence in the providing of safe, sufficient and suitable coaches, harness, horses and coachmen, in order to prevent those injuries which human care and foresight can guard against; and that if an accident happens *from a defect in the coach, which might have been discovered and remedied upon the most careful and thorough examination of the coach, such accident must be ascribed to negligence, for which the owner is' liable in case of injury to a passenger happening by reason of such accident.
If this case is to be regarded as establishing that a latent defect in the coach, which a careful examination would not disclose, forms an exception to the general undertaking of the carrier to furnish a sufficient coach (about which I do not deem it necessary to express an opinion), it is clear, I think, that this exception has no bearing on' the case, and that in expounding the law, there was nothing- making it incumbent on the judge to state it. And the true point of enquiry out of which the conflict of instructions arose, was whether an alleged defect in the harness used by the plaintiff in error (which if it existed, was á patent defect consisting in the absence of a certain portion of the harness, with or without which it could be used), was a proper matter of enquiry for the jury; and if so, whether on their being of opinion that there was such defect, they could make it the ground for finding the plaintiff in error guilty of neglect.
If the proposition contended for by the plaintiff in error is to be received as the law, viz: that he undertakes only that his coaches, harness and fixtures shall be sound and complete of the kind used on his line, it follows that he may be excused from liability in the face of the amplest proof to show that owing to their style or kind, they were positively dangerous. In no case that I have seen can any warrant be found for such a rule. Could it be said, in the language of the case of Ingalls v. Bill, that a carrier uses the utmost care and diligence in the providing of safe, sufficient and suitable coaches, harness, &c., if it was shown that from want of care, skill or judgment, he *had selected for use on his line, a style of harness shown to be less safe than another which had long been in use, and which was known by him to be in use? Such a rule seems to me to alter the relative rights and duties of the carrier and passenger. The passenger, instead of relying on the carrier to use the proper care and judgment in the selection of the coach, harness, &c., with a view to its safety, would have to use the utmost diligence, whenever about to take passage, in enquiring into the style and fashion of the coach used on the line, and then to determine for himself whether or not a stage constructed after such style or fashion, would or would not, probably, be safe. The law, I think, imposes no such duty on the passenger. He has, I think, a right to expect that the carrier who has undertaken to use the greatest care and skill in providing-for his safe passage, will exercise the proper caution and care in seeing that his coach is not only sound and complete of its kind, but is also of a safe kind. The traveling public have a right to expect that he who undertakes to fill such a responsible post, will bring to the discharge of its duties all the knowledge that appertains to the calling; that he will observe and compare the different kinds of coaches is use, and direct his attention to the principles on which they are constructed, in order to use a well informed experience and an enlightened judgment in the selection of such as will be most likely to insure the safety of those who are to be carried in them. The carrier cannot be said to have fulfilled the requirements of the law so long as there exists any known want of safety in his coaches, harness, &c., whether arising from defectiveness of material or workmanship, or faultiness of the principle on which they are constructed, for which there is a known remedy, used wisely as a means of safety, by others, of skill and sound judgment, engaged in the same *business. A danger arising from any such defect cannot be properly regarded as one of those risks or dangers necessarily incident to • the mode of travel, which it is presumed every passenger has made up his mind to encounter.
In the case before us there was not only testimony tending to show that there would be a greater degree of safety in using harness with breeching than without, but that the horses could be readily trained to the use of such harness in holding back. In this state of things, seeing that the slight change in the harness, by the addition of breeching, would be attended by little or no expense and with slight trouble or inconvenience in training the horses to the use of it, it seems to me that it was a fair subject for the jury to consider (in case they believed what the evidence of the defendant in error-tended to prove), whether the failure of the plaintiff in error to make the change, as a measure of safety, was not evidence of a want of proper care and vigilance on his part, in providing for the safety of those traveling in his coaches.
The seeming conflict in the instructions was brought about by the plaintiff in error, in asking and obtaining from the court an instruction to which, in the view I have taken, he was not entitled; and there is nothing, therefore, in that particular, of which he has any right to complain.
Upon a view of all the instructions given by the court, as a whole, I have been unable to discover that they assert any principle which bears too harshly on the plaintiff in error, or which was calculated to mislead the jury, to his prejudice. And at a period *363 when the facilities for travel are so rapidly multiplying, and the amount of travel is so constantly on the increase, I feel no disposition to relax any of the rules which hold the carrier to a strict accountability. When so many causes are conspiring to engender and foster a *love for the excitement of rapid traveling, which is •daily betraying the managers and conductors of every species of conveyance into a fatal disregard of all the precautions essential to the preservation of the limbs and lives of those committed to their charge, I do not- think that the law should slacken the reins by which to some extent at least, it holds them in check. On the contrary, policy, humanity and reason all seem to require from the courts a stern adherence to the principles which tend to insure the greatest care on the part of the carrier, and the least danger to the passenger.
The fourth instruction given at the instance of the defendant in error is objected to, not because it states the law incorrectly, but because, as is said, there was no evidence tending to prove that the coach was upset in consequence of having too much baggage on the top. If there was no evidence on that head, the plaintiff in error could not have been injured by a correct statement of the law, that the carrier would be liable for an injury arising from an overturning of the coach occasioned by its being too heavily loaded on the top. On the other hand, if there was any competent and relevant testimony, however slight, tending to show that the upsetting was due to that cause, the defendant in error was entitled to have the law in that particular hypothetically expounded to the jury. There was, I think, evidence tending to the proof of such fact. Discarding the statement of the witness Cralle, that the driver Carper said to him that he thought there was too much baggage on the top, and that he thought the upsetting was in part occasioned thereby, as illegal, except for the purpose of impeaching Carper, I think there was circumstantial evidence, though slight, tending to the conclusion that the coach was top-heavy, and that the upsetting may have been partly due to that cause. It is in proof that *there were eleven passengers, nine inside and two on the outside. How and where their baggage was disposed, does not appear, with the exception that one of the passengers proved that his trunk was in the boot behind.
Carper says that he has no recollection as to the amount of baggage on the top of the stage, or the number or size of the trunks; that “he found it all on, and under the canvas when he took charge; and had no occasion to handle or examine it. ’ ’ And he further states “that in coming down the hill and around the turns, the stage rocked very much from side to side, and just before turning over on the left hand, had strongly tilted to the right, and in falling back, tilted the other way, and seemed to him to be some distance on the left wheels before it went clear over.”
And it is further shown that at the point where the coach overturned, the road was level across, though slightly descending. The rocking of the coach from side to side, and the manner of its turning over, were circumstances tending to the inference that it was top-heavy. I think the plaintiff in error had a right to the instructions.
The last cause of error assigned is the refusal of-the court to set aside the verdict and grant a new trial. We have no certificate of the facts; but only a certificate of the evidence. When such is the case, this court has uniformly refused to take cognizance of the exception, except when it appears that after rejecting all the parol evidence in favor of the party excepting, and giving full force and credit to that of the adverse party, the decision of the court below still appears to be wrong. Pasley v. English, 5 Gratt. 141; Rohr v. Davis, 9 Leigh 30. Applying this rule there is nothing to rebut or weaken the prima facie case made by proof of the upsetting of the stage, and the consequent *injury to the defendant in error. So far from it, the evidence in favor of the verdict shows most clearly a case of culpable negligence on the part of the driver. Without adverting to the other evidence in support of such a conclusion, the driver’s own account of his conduct proves it. He showed a want of ordinary care in failing to make a more minute examination of the blocks at Red Banks where he first took charge of the coach. There was the same want of care in their examination at Woodstock, when the most ample time and opportunity were afforded for a thorough examination. Having fathed to make such examination at Woodstock, he was guilty of the grossest negligence in failing to assure himself that the blocks were in before he commenced descending the hill where the disaster occurred. In the absence of breeching or any other substitute by which the horses could hold back and prevent the stage from running on them, he knew that his main if not sole reliance for a safe descent of the hill was in the brake, which, he also knew, would be of no avail if the blocks were not in place; yet he most negligently and recklessly commenced the descent of the hill without having tested the presence or absence of the blocks, which might have been done by simply applying his foot to the brake. Whilst descending the hill he for the first time discovered that the blocks were out. The brake of course was useless. As might have been expected, the stage soon began to run on the horses, and they, in the absence of any other cause of fright, ran off and upset the stage. The disaster is thus most cleariy traced, by the driver’s own account of his conduct, to his unpardonable failure to provide the means, with his power, by which to prevent it.
It is, however, in the last place insisted that the damages are excessive, and that this appears from the '^evidence of the defendant in error, and that the *364 court ought to have granted a new trial for that cause. o
There is no rule of law fixing the njeasure of damages in such a case; and it cannot be reached by any process of computation. In cases of the kind, the judgment of the jury must govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. 16 Pick. R. 547.
On the one hand, the damages seem to be heavy. On the other, the injuries, losses and sufferings which they are designed to compensate, are proved to be great.
The head of the defendant in error was severely cut, and one of his legs badly broken, the smaller bone protruding through his clothing and boot. One of his physicians thought, at first, that amputation would have to be resorted to. His agonies, physical and mental, must have been intense. For some time his mind was seriously affected. At the time of the trial, rather more than a year after the happening of the disaster, his leg had not entirely healed; the limb was shortened and. the joint stiff. The use of crutches was still necessary, and the physicians expressed the opinion that he would be a cripple for life. He was necessarily confined for some six months in a house near the place of the disaster, detained from his business, and from his home, which was in another state. The presence of members of his family, some during the whole time, and .others for a portion of it, was necessary, in order that his wants and comforts might be properly attended to; and the expenses which he encountered in the discharge of the bills of boarding and the attendance of his physicians, and other incidental charges, were necessarily large.
*In view of such a state of facts, I cannot undertake to say that the damages are so plainly beyond a reasonable compensation, so manifestly exorbitant, as to require us to disturb the estimate and verdict of the jury.
I think the judgment ought to be affirmed.
The other judges concurred in the opinion of Daniel, J.
Judgment affirmed.
COflMON CARRIERS.
I. In General.
A. Definition.
B. Telegraph Companies as Carriers.
C. Preference to Solicitors of Baggage.
D. Responsibility of Receivers.
II. Control and Regulation by State and- Federal Governments.
III. Carriers of Goods.
A. Delivery by Carrier.
B. Bills of Lading.
C. Contract of Transportation and Delivery.
D. Liability.
1. In General.
a. Responsibility for Goods Received, Degree of Care Required, and Exceptions by Law to-Liability.
b. Act of God,
2. Beginning and Ending of Liability.
3. Loss or Damage on Line of Connecting Carrier.
4. As Warehouseman.
5. As Forwarder.
6. When Privthege Is Extended to Other Companies or Corporations to Carry Articles on Train.
7. When Cars Are Hired.
8. As Agent for Connecting Carrier.
E. Contracts of Exemption and Limitation.
F. Freight, Demurrage and Other Charges.
1. Statutory Regulations.
2. Preferences.
3. When Entitled to Freight and Demurrage.
4. When Freight Is Due.
5. Set-Off.
6. Recovery.
7. Excessive Charges.
IV. Carriers of Live Stock.
A. Statement of Duty.
1. Degree of Care and Liability in General.
2. Confinement and Treatment in Transitu.
B. Loss or Damage Caused by Default of Owner.
C. Contracts of Exemption and Limitation.
V. Carriers of Passengers.
A. In General.
B. Relation Existing between Carrier and Passenger.
1. Who May Become a Passenger.
2. Who Is Entitled to the Protection of a Passenger.
3. When Presumed to Be a Passenger.
4. Treatment and Protection of Passenger.
5. Right of Carrier to Make Rules and Have Them Obeyed.
C. Fares and Tickets.
1. The Ticket.
2. Schedules.
3. Advancements and Reductions.
4. Opening of Ticket Office.
5. Rights in Connection with Ticket.
a. Of Passengers.
b. Of Carriers.
6. Annual Passes.
7. Commutation Books.
8. Overcharges.
9. Contract to Furnish Ticket.
D. Injuries to Passengers.
1. In General.
a. Statement of Duty as to Care and Safety.
b. Source of Liability for Injuries Occurring to Passengers.
c. Duty to Passenger and Employee Distinguished.
d. Illustrative Cases Involving the Nonperformance of Duty to Protect from Injury.
(a) Taking on Passengers.
(b) In Transitu.
(c) Setting Down Passengers.
e. To Whom Liable, and When.
E. Negligence.
1. In General.
2. Contributory Negligence.
a. In General.
b. Cases Illustrative of Principles.
(a) Entering Conveyance.
(b) In Transitu.
(c) Leaving Conveyance.
*365 3. Imputed.
4. Concurrent Negligence.
5. Proximate Cause.
F. Ejection.
G. Baggage.
VI. Actions.
A. Against Carriers of Goods.
1. In General.
2. Pleading and Practice.
a. Form of Action.
b. Proper Parties to Proceedings.
c. Process.
d. The Declaration.
e. Variance.
f. Set-Oif.
g. Bill of Exceptions.
h. Instructions.
i. Judgment.
3. Evidence.
B. Against Carriers of Live Stock.
1. Pleading and Practice.
2. Evidence.
C. Against Carriers of Passengers.
1. Pleading and Practice.
a. Form of Action, Parties, Venue, and Questions for Jury in General.
b. The Declaration.
c. Instructions.
d. Damages.
2. Evidence.
VII. Criminal Liability.
Cross References to Monographic Notes.
Agencies, appended to Silliman v. Fred., etc., R. Co., 27 Gratt. 119.
Assignability of Choses in Action.
Assumpsit.
Damages, appended to N. & P. R. Co. v. Ormsby, 27 Gratt. 455.
Death by Wrongful’ Act.
Instructions, appended to Womack v. Circle, 29 Gratt. 192.
Insurance, Fire and Marine, appended to Mut. Assur. Soc. v. Holt, 29 Gratt. 612.
Negligence.
I. IN GENERAL.
A. DEFINITION. “The term ‘common carrier’ shall be construed to include any railroad, express or canal company, chartered by this or any other state and doing business in this state, whether incorporated or not. and whether operated or controlled by an individual or partnership.” Virginia Acts of Leg. 1891-92, p. 965; Pol. Supl. Code (1900), § 1297 a, ch. 18.
B. TELEGRAPH COMPANIES AS PUBLIC CARRIERS.—Telegraph companies are not public carriers in the strict sense of the term, yet on account of the public nature of their employment, they have in many cases been held to a very similar responsibility. West. Union Tel. Co. v. Reynolds, 77 Va. 173.
C. PREFERENCE TO SOLICITORS OF BAGGAGE.—Where the legislature adopts an English statute prohibiting carriers from giving undue preferences to particular persons, it will be presumed that the settled construction given to such statute by the English courts is intended to be incorporated in the act, and such construction will govern in the interpretation thereof. N. & W. Ry. Co. v. Old Dominion Baggage Co. (Va. 1900), 37 S. E. Rep. 784.
Thus, under Acts 1891-92, p. 965, providing that common carriers shallnotgive preference to particular persons in any respect, or subject any particular person to prej udice, a baggage transfer company cannot restrain a railway company from allowing a rival baggage company the exclusive privilege of entering its grounds to solicit baggage. N. & W. Ry. Co. v. Old Dom. Bag. Co. (Va. 1900), 37 S. E. Rep. 784.
D. RESPONSIBILITY OF RECEIVERS.—A receiver appointed to assume charge of the affairs of a railroad company may be held responsible for the damage actually sustained through the negligence of the receiver’s agents and employees, in any case in which the company could be so beld. But where the receiver is appointed by a court of equity he cannot be sued at law without permission of the appointing court. Melendy v. Barbour, 78 Va. 514.
II. CONTROL AND REGULATION OF CARRIERS. State Government—Fixing Charges of Transportation of Freight and Passengers.—The right to regulate and fix at their pleasure the charges of railroad companies for transportation of freight and passengers is one of the powers of sovereignty inherent in every state, to be exercised by the legislature from time to time at its pleasure. A legislature cannot, however, by a charter granted to one company, make stipulations as to charges which will be funding on future legislatures. Laurel Fork, etc., R. Co. v. Transportation Co., 25 W. Va. 324; W. Va. Transportation Co. v. Sweetzer, 25 W. Va. 434; Richd. & A. R. R. Co. v. Patterson, etc., Co., 92 Va. 670, 24 S. E. Rep. 261, 1 Va. Law Reg. 917.
Thus, the W. Va. Act 1873, ch. 227, establishing a reasonable maximum rate of charges for the transportation of passengers and freight, and providing relative to unjust discrimination and extortion in the rates to be charged by different railroads in the state, is applicable to all railroads in the state, whether the charters were granted before or after the act. Furthermore the act is constitutional. Laurel Fork, etc., R. Co. v. Transportation Co., 25 W. Va. 324; W. Va. Transportation Co. v. Sweetzer, 25 W. Va. 434.
Connecting Carriers.
Facilities for Interchange of Traffic and Passengers.— Act March 3, 1892, § 4, requires common carriers to afford all reasonable, proper, and equal facilities for traffic between their respective lines, and for receiving, forwarding, and delivering passengers and property to and from their several lines and connecting lines. Under this act it is held that a railroad, so changing its time card that a connection with a connecting road, which is of general convenience, is discontinued, in order to furnish better facilities to several towns, is in violation of the statute. So. Ry. Co. v. Com., 98 Va. 758, 37 S. E. Rep. 294. See Pol. Supl. Code (1900), § 1297 a.
For statutes affecting carriers, see Va. Code 1887, § 1217, providing that “Railroad companies are not liable for acts of express companies”; §1295, relating to “Liability of carrier for transportation beyond the terminus of his line”; § 1296, “When agreements exempting carrier from liability not valid”; § 1297 (W. Va. Code 1900, p. 775), “How carrier may be sued, when not incorporated, and when suit not to abate”; § 3228, (W. Va. Code 1900, p.847), “Process”; § 1297 a, Pol. Supl. containing provisions relative to “Long and Short Haul,” “Rates,” “Preferences,” “Discrimination,” “Rebates,” “Drawbacks,” “Public Schedules,” “Interchange of Traffic,” “Opening *366 Ticket Office,” etc., etc., being a general provision; W. Va. Code 1900, p. 955, “Embezzlement by Carrier”; W. Va. Code 1900, p. 949, “Penalty on conductor or captain of boat or public conveyance, for negligently injuring anyone.” See 24 Stat. (U. S.) 879, and25 Stat. (U. S.) 855; also, Interstate Com. Acts, July 22d 1897, Nov. 16th 1897. These statutes are more fully treated hereafter, under heads appropriate to the subject-matter involved. Reference is therefore made to them.
Federal Government.
Power to Control and Regulate.—Congress has power under the constitution of the United States, to regulate commerce among the states, and this power embraces the power to regulate all the various agencies by which that commerce is conducted. State laws which undertake, in any form, to enforce a tax on such commerce, or to impose a burden or hindrance thereon, or to embarrass commercial intercourse and transactions, or to give citizens of one state any advantage over citizens of another state engaged in interstate commerce, are regulations of commerce among the states, and therefore void. This power, when exercised by congress, is exclusive in its character, and the omission to exercise it is equivalent to a declaration of the will of congress that it shall remain free and uncontrolled in those respects in which the subject is capable of'being dealt with by general regulations. R. & A. R. Co. v. R. A. Patterson Tobacco Co., 92 Va. 670, 24 S. E. Rep. 261, 1 Va. Law Reg. 917. See, in general connection, So. Ry. Co. v. Com., 98 Va. 758, 37 S. E. Rep. 294; Va., etc., Co. v. L. & N. R. Co., 98 Va. 776, 37 S. E. Rep. 310; State v. R. Co., 24 W. Va. 783, construing W. Va. Code 1891, §§ 16, 17, ch. 149, relating to Sunday laws, these sections being held not to be in conflict with the Constitution of the U. S., art. 1, § 8, ch. 3; N. & W. R. R. Co. v. Com., 88 Va. 95, 13 S. E. Rep. 340, construing Va. Code 1887, § 3801, relating to Sunday laws, in which case this statute was held void and inoperative being in conflict with the Constitution of the U. S., art. 1’, § 8, providing that congress shall have power to regulate commerce among the! several states.
Same—Interstate Commerce Acts.
Filing Joint Rates—Connecting Carriers.—Under the Interstate Commerce Act (24 Stat. 379), as amended by Act, March 2,1889, ch. 382 (25 Stat. 855), requiring the filing with the commission of established joint rates by connecting carriers, and making it unlawful for any such carrier to receive a greater or less compensation for the! transportation of freight, a contract for the shipment of freight beyond the line of a receiving carrier, at a rate which it has furnished the commission, and which is less than the aggregate of the rates charged by the connecting carriers, is not invalid, where the receiving carrier, without intending to violate the act, fixed such rate on quotations made to it by the connecting line, and by mistake fixed the rate for such connecting line at less than it charged. And failure of the other connecting carriers to give publicity to the rate does not invalidate a contract for the shipment of freight over such connecting lines, as violative of the interstate commerce law, which is otherwise valid. Va., etc., Co. v. Louisville & N. R. Co., 98 Va. 776, 37 S. E. Rep. 310.
And lowering a freight rate in the manner required by the Interstate Commerce Act (July 22d 1897, Nov. 16th 1897), after a contract has been made in violation of that act, does not render the contract valid and binding on the carrier, and, if under no legal obligation to lower the rate, the carrier may restore the rate so lowered. Southern Railway Co. v. Wilcox (Va. 1900), 7 Va. Law Reg. 381.
111. CARRIERS OF GOODS.
A. DELIVERY BY CARRIERS.
Duty Imposed by Statute to Notify Consignee When Freight Is Ready for Delivery—Removal.—It is provided by statute, Acts 1891-92, p. 965, Pol. Supl. § 1297 a, that it shall be the duty of every company upon the arrival of freight shipped to any of its depots or stations to notify the consignee, by mail or otherwise, when such freight is ready for delivery, and give a reasonable time for the removal of the same, making due allowance for its class and for bad weather and holidays.
By undertaking to transport goods, a common carrier necessarily includes the duty of delivering them in safety, and within a reasonable time, and the carrier is liable for all loss or damage except that which is caused by the act of God, the act of the common or public enemy, or the act of the owner of the goods. B. & O. R. Co. v. Morehead, 5 W. Va. 293; Murphy v. Staton, 3 Munf. 239. Or as held by some authorities, a carrier is not liable when the loss occurs by reason of acts of public authority, as for instance, destruction under the police power. Mugler v. Kansas, 123 U. S. 623; Railroad Co. v. Husen, 95 U. S. 465. Nor losses caused by the inherent nature of the goods. The doctrine as to the latter has been so declared in Mississippi, Illinois, Massachusetts, New York, and in England. As to the exception in case of loss in shipping live animals, see post, “Carriers of Live Stock.” In the exceptional cases declared in Virginia and West Virginia, the carrier will, nevertheless, still be responsible if the inevitable accident is the remote, and not the immediate, cause of the loss, and the loss could have been avoided by prudence and proper care. B. & O. R. Co. v. Morehead, 5 W. Va. 293; Murphy v. Staton, 3 Munf. 239. The question of liability for loss or damage is treated more fully, post, “Liability,” to which reference is made.
Effect of Acceptance by Consignee after Carrier’s Breach of Contract.—And again, acceptance of goods which a carrier has contracted to deliver at a certain time and which it has fathed to deliver until a later date is no waiver of the consignee’s right of action for the delay. N. & W. R. Co. v. Ship. Comp. Co., 83 Va. 272, 2 S. E. Rep. 139.
Disposition to Be Made of Goods—When Delivery Is Prevented by a State of War.—Furthermore, if access to the assignee, and delivery of the goods at the end of the route, is prevented by a state of war, it is the carrier’s duty to take care of the goods for the consignor, and notify him within a reasonable time of his inability to make the delivery, after which his liability is only that of the bathee. B. & O. R. Co. v. Morehead, 5 W. Va. 293.
Same—Duty to Deliver.—An express company is a common carrier and its responsibility for the safe delivery of the property expressed to it is the same as that of the carrier. So. Exp. Co. v. McVeigh, 20 Gratt. 264.
B. BILLS OF LADING.
Nature.—Bills of lading are held, in Pollard v. Vinton, 105 U. S. 1, to be both a receipt and a contract. So far as they acknowledge the delivery and acceptance of the goods, they are mere receipts. As to the rest, they are contracts.
*367 Property in Goods Acquired by Bill of Lading.—And a party discounting a draft, and receiving therewith, deliverable to his order, a bill of lading of the goods against which the draft was drawn, acquires a special property in them, and has a complete right to hold them as security for the acceptance and payment of the draft. Neill v. Rogers, etc., Co., 41 W. Va. 87, 23 S. E. Rep. 702.
Effect of Notice of Claim, When Bill Omits Name of Claim Agent’s Office.--And it should be noted, that where a bill of lading does not state the location of a claim agent’s office, a stipulation that notice of a claim must be given within five days is unreasonable and void. Norfolk & W. Ry. Co. v. Reeves, 97 Va. 284, 33 S. E. Rep. 606.
IssuingDupiicate Bills—Statutory Requirement.—As to the issuance of duplicate bills to shippers, Va. Acts 1891-92, p. 965, Pol. Supl. § 1297 a, ch. 7. has the following provision: “All common carriers doing business in this state shall on demand issue duplicate freight receipts to shippers, in which shall be stated the class or classes of freight shipped and the freight charges over the road giving the receipt.’’
Construction of Words “At the Owner’s Risk,” Appearing in the Bill of Lading.—The term, “at the owner’s risk,’’ in a bill of lading, which is declared to be a special contract, taken in connection with other stipulations therein, limits the carrier to such loss or damage only as might result from ordinary neglect, which is defined to mean that want of care and diligence which prudent men usually bestow on their own concerns. B. & O. R. Co. v. Rathbone, 1 W. Va. 87.
Liability under Bill of Lading.—In Lewis v. C. & O. Ry. Co. (W. Va. 1900), 35 S. E. Rep. 908, a carrier received lumber for shipment to Europe. Subsequently, it was held liable under its bill of lading for the lumber, which was lost after placing it on the pier of the railway company under its exclusive control.
C. CONTRACT OF TRANSPORTATION AND DELIVERY.
What Contract Implied by Law.—When a common carrier undertakes to convey goods, the law implies a contract, that they shall be carried and delivered at the place of destination safely and within a reasonable time. And what is “reasonable time” within which goods are to be delivered, cannot be defined by any general rule, but must depend upon the circumstances of each particular case. Thus, the mode of conveyance, the distance, the nature of the goods, the season of the year, the character of the weather, and the ordinary facilities of transporation are matters properly filtering into the consideration of what is “reasonable time.” McGraw v. B. & O. R. Co., 18 W. Va. 361.
Consideration to Support the Contract.—And the mutual obligation of a shipper to ship, and of a carrier to carry, furnish sufficient consideration for a contract to carry at a specified rate; but if the shipper fails to accept the carrier's offer, and is not bound to furnish the goods for carriage, the carrier’s offer or promise to carry for a particular rate becomes a mere nudmn pactum, the breach of which will not support an action. Southern Railway Co. v. Wilcox, 7 Va. Law Reg. 381.
Estoppel to Recover Higher Value Than Agreement Specifies.—As a common carrier is entitled to be fairly informed as to the value of the property confided to his care, where a shipper enters into an agreement with a carrier as/to the value of the property shipped, and receives the benefit of low rates by reason of placing a low valuation upon the property, he is estopped from claiming or recovering another and higher valuation after the loss occurs, although said loss may be the result of negligence on the part of the carrier, provided the same is not gross, wanton, or wilful. Zouch v. C. & O. Ry. Co., 36 W. Va. 524, 15 S. E. Rep. 185.
Construction of Contract for Transportation.—in White y. Toncray, 9 Leigh 347, there was a covenant between a carrier and a manufacturer of salt, whereby the carrier agreed to transport from 1200 to 5000 barrels of salt, annually for three years, from the manufacturer’s salt works, for certain specified prices, for a stipulated reward per barrel transported. It was held that the manufacturer, and not the carrier, had the right to elect what quantity of salt, not less than 1200 nor more 5000 barrels, should be transported by the carrier annually.
Performance.
When Liable for Delay.—in McGraw v. B. & O. R. Co., 18 W. Va. 361, potatoes were delivered at the defendant’s depot on the 13th day of February 1866, to be shipped, on the 14th. There was a daily train between the two points of shipment; the weather was mild and so continued on the 14th; but the potatoes did not reach Grafton, their destination, until the 16th, and arrived so frozen as to be worthless, the weather on the 15th and 16th haying become cold. Under the circumstances the company was held liable in damages for the delay.
When Right of Action for Delay Not Waived.—Where there has been a delay in the transportation of goods causing a breach of the carrier’s contract to deliver at a specified time, by reason of which loss ensues to the consignee, such consignee’s right of action for the delay is not waived by a mere acceptance of the goods upon arrival at a later date than that specified in the contract. N. & W. Ry. Co. v. Ship. Comp. Co., 83 Va. 272, 2 S. E. Rep. 139. See post, “Liability.”
D. LIABILITY.
1. In General.
a. Responsibility for Goods Received, Degree of Care Required, and Exceptions by Law to Liability.— The law imposes upon the common carrier of goods an unusual and extraordinary liability. The foundation for this requirement rests upon considerations of public policy and convenience. The carrier is regarded as a practical insurer of the goods entrusted to him, and is liable for all losses, except such as arise by the act of God, the public enemy, or the conduct of the owner, unless the loss or damage arises from the nature and inherent character of the property carried, such as the natural decay of perishable articles, or the fermentation or evaporation of articles liable to these effects, or the natural and necessary wear of certain articles, or from defects in the packages in which they are shipped, or in the case of live stock where the loss arises from their own. vitality, or where vicious and unruly animals injure and destroy themselves by refusing food, or die of fright or heat, provided the carrier has used foresight, diligence and care to avoid such loss and damage. McGraw v. B. & O. R. Co., 18 W. Va. 361; B. & O. Ry. Co. v. Morehead, 5 W. Va. 293; Murphy v. Staton, 3 Munf. 239. And the onus is upon the carrier to show that the loss was such as he could not have prevented. B. & O. Ry. Co. v. Morehead, 5 W. Va. 293. See post, “Carriers of Live Stock,” for exceptions in transporting live animals.
*368 It is held by some authorities upon the common law, that the rule rendering common carriers liable for every loss, except that which is caused by the act of God or the public enemy, was not a part of the ancient common law. It is a comparatively modern innovation, introduced in consequence of the growing commercial relations of the country, an imperfect police, imperfect protection from the government, and frequent losses by robbery. “The first case in which the principle was recognized and settled is that of Woodliefe and Curtis in the thirtyeighil year of the reign of Elizabeth. And the reason of the rule is not, as stated by Sir Edward Coke, solely or principally because the carrier hath his hire ; for other bathees for hire and private carriers for hire are not liable in the same manner and to the same extent.” PerBocKEE, Sen., in Van Santvoord v. St. John, 6 Hill 157.
If this be the true doctrine other innovations upon the liability of the carrier have been added in more recent times. Thus by some authorities a carrier is not liable when the loss occurs by reason of acts of public authority, as for instance, destruction under the police power. Mugler v. Kansas, 123 U. S. 623; Railroad Co. v. Husen, 95 U. S. 465. Or loss arising from the nature and inherent character of the property in custody. McGraw v. B. & O. R. Co., 18 W. Va. 361. The doctrine as to the latter has been also declared in Mississippi, Illinois, Massachusetts, New York, England, and doubtless other states. Another exception is when the loss occurs by reason of the act of the owner of the goods. B. & O. Ry. Co. v. Morehead, 5 W. Va. 293; Murphy v. Staton, 3 Munf. 239; McGraw v. B. & O. R. Co., 18 W. Va. 361.

b. Act of God.

Meaning and Application.—There is much conflict in the authorities as to the meaning of the term, “the act of God.” Some restrict its meaningto accidents in which it was impossible that there could have been any intervention of human agency. Again a distinction is drawn between active and passive acts of nature or the elements. As said by a learned author, “perhaps no subject could open a wider field for theological and speculative discussion than the question what are the acts of God. In one sense it may be said that all events may be attributed to His agency; but, this is by no means the sense in which the phrase is to be legally understood; and it can never become necessary, so far as the question of the liability is concerned, to discuss so abstract a proposition, because the exception to his liability intended by these words has, by a long course of almost concurrent adjudication, received a tolerably fixed and definite but limited meaning.”
As a general rule, it is held, that the act of God, which excuses the common carrier, must be a direct and violent act of nature. Thus “such an accident as could not happen by the intervention of man, as storms, lightning and tempests”; “those losses that are occasioned by the violence of nature by that kind of force of the elements, which human ability could not have foreseen or prevented, such as lightning, tornadoes, sudden squalls of wind”; "an extraordinary convulsion of nature”; “a direct visitation of the elements, against which the aids of science and skill are of no avail”; “physical causes which are irresistible, which human foresight and prudence cannot anticipate, nor human skill and diligence prevent, such as loss by lightning, storms, inundations and earthquakes, and the unknown dangers to navigation, which are suddenly produced by their violence.” See Friend v. Woods, 6 Gratt. 195; Maslin v. B. & O. R. Co., 14 W. Va. 189; McGraw v. B. & O. R. Co., 18 W. Va. 361.
Freezing Weather.—In this latter case potatoes were shipped by the plaintiff, and upon arrival at their destination, it was discovered that they were frozen to such an extent as to be worthless. The carrier fathed to ship on the day agreed, delaying the shipment to a subsequent day at which time the weather was cold, a sudden change having taken place in the conditions of the atmosphere. The defence set up by the carrier was, that the freezing weather caused the loss, and this brought the loss within the exception “act of God.”
The court in answering this defence, in the course of its argument, said : “If the question in this case depended solely on the question, whether the plaintiff in error (carrier) was liable for the loss of the property from freezing, because that was an act of God, I should have no hesitation in saying that the liability exists. But on the other hand, if the question of liability rests simply upon the question, whether they were liable for the freezing of the property, having been guilty of no negligence or misconduct, by which that injury resulted, I would have as little hesitation in skying, that they were not liable ; not because the freezing was an act of God, or an inevitable accident, but because of the exception ti> that principle, on account of the nature and inherent character of the property and its liability to freeze.”
Bar in River.—And in Friend v. Woods, 6 Gratt. 189, a common carrier on the Kanawha river stranded his boat upon a bar which had been formed in the river a few days before the boat had proceeded on its voyage, the bar resulting from a rise of the Elk river, a tributary of the Kanawha, causing the ice to gorge at its mouth, and a bar of sand and gravel to form in the channel along which the boat had to pass. The officers and crew of the boat were ignorant of the bar, when the boat stranded upon it. The defence interposed was that the accident which caused the loss was due to the act of God. The court in arguendo said: “Among the strongest authorities stated in behalf of the plaintiffs in error are the cases of Smyrl v. Niolon, 4 Bailey 421, 23 Am. Dec. 146; Williams v. Grant, 1 Conn. 487, 7 Am. Dec. 235. In the former it was held that a loss occasioned by boats running on an unknown ‘snag’ in the usual channel of the river, is referable to the act of God, and that the carrier will be excused ; and in the latter it was said that striking upon a rock in the sea not generally known to navigators, and not known to the master of the ship, is the act of God. And other authorities go so far as to assert that if an obstruction be secretly sunk in the stream, and, not being known to the carrier, his boat founder, he will be excused. The last proposition stands condemned by the leading cases both in England and America. In the case of Forward v. Pittard, 1 T. R. 27, Lord Mansfield says, that ‘to prevent litigation, collusion, and the necessity of going into circumstances impossible to be unravelled, the law presumes against the carrier, unless he shows that it was done by the king’s enemies, or by such an accident as could not happen by the intervention of man, as storms, lightning and tempest.’ The same doctrine is strongly stated in McArthur v. Sears, 21 Wend. 196, where it is said that ‘no matter what degree of prudence may be exercised by the carrier and his servants ; although the delusion by which it is baffled, or the force by which it is overcome, be inevitable ; yet if it be the result of human means, the carrier is responsible.’ These cases clearly restrict excuses of the carrier for losses occasioned by obstructions in the stream to such obstructions as are wholly the result of natural causes. * * The rule, it is insisted, isaharsh one upon the carrier, and it is argued that the court should be slow to extend it further than it is fully sustained by the cases. However harsh the rule may at first appear to be. it has been long established, and is'well founded on maxims of policy and convenience, and viewing the carrier in the light of an insurer, it is of the utmost importance to him, as well as to the public who deal with him, that the acts for which he is to be excused should have a plain and well-defined meaning. When it is understood that no act is within the exception, except such a violent act of nature as implies the entire exclusion of all human agencies, the liabilities of the carrier are plainly marked out, and a standard is fixed by which the extent of the compensation to indemnify him for his risks can be readily measured and ascertained.” In view of these principles the carrier was held liable Cor the damage done to the freight on board his boat. For instances where these principles have been applied in connection with losses or injuries suffered by passengers, see post, “Carriers of Passengers.” *369 which it is overcome, be inevitable ; yet if it be the result of human means, the carrier is responsible.’ These cases clearly restrict excuses of the carrier for losses occasioned by obstructions in the stream to such obstructions as are wholly the result of natural causes. * * The rule, it is insisted, isaharsh one upon the carrier, and it is argued that the court should be slow to extend it further than it is fully sustained by the cases. However harsh the rule may at first appear to be. it has been long established, and is'well founded on maxims of policy and convenience, and viewing the carrier in the light of an insurer, it is of the utmost importance to him, as well as to the public who deal with him, that the acts for which he is to be excused should have a plain and well-defined meaning. When it is understood that no act is within the exception, except such a violent act of nature as implies the entire exclusion of all human agencies, the liabilities of the carrier are plainly marked out, and a standard is fixed by which the extent of the compensation to indemnify him for his risks can be readily measured and ascertained.” In view of these principles the carrier was held liable Cor the damage done to the freight on board his boat. For instances where these principles have been applied in connection with losses or injuries suffered by passengers, see post, “Carriers of Passengers.”
Effect When Negligence Is the Proximate Cause.— But whenever the common carrier is exempted from liability, either because of the act of God or because of the nature and inherent character of the property and its liability to loss and damage, he must be free from any previous neglect or misconduct, by which that loss or damage may have been occasioned. For though the immediate and proximate cause of the loss in any given instance may have been what is termed the act of God, or from the nature and inherent character of the property, yet if the carrier unnecessarily exposed the property to such accident by any culpable act or omission of his own. he is not excused. And the previous neglect or misconduct, which makes the carrier liable for loss to property, must be immediately or proximately connected with the accident or loss. If it is remotely the occasion of the loss or damage the carrier is not liable. He is answerable for the ordinary and proximate consequence of his negligence, and not for those that are remote and extraordinary, and this liability includes all those consequences, which may have arisen from the neglect to make provision for those dangers which ordinary skill and foresight is bound to anticipate. Thus, a shipper delivered potatoes to a carrier on the 13th day of the month to be shipped to a point between which and the shipping station there were daily trains. The 13th was fair and the weather moderate, and upon this day the carrier agreed to ship. As a matter of fact they did not reach their destination nntil the ltíth, and upon their arrival they were found to be frozen and worthless, a decided change having taken place in the condition of the weather after the 13th, the day upon which they should have been shipped. The carrier defended on the ground that the loss was caused by the freezing, which was due to an act of God. The courtheld that freezing weather, causing a loss to goods, could not be deemed an act of God. and did not come within the definition of that term. It further held, however, that if the question of liability rested solely upon the question, whether they were liable for the freezing of the property, having been guilty of no negligence or misconduct, by which that injury resulted, they would not be liable, not because the freezing was an act of God or an inevitable accident, but because of the exception to that principle on account of the nature and inherent character of the property and its liability to freeze. But it was shown by the evidence that the carrier was negligent in having fathed to ship on the 13th day of the month as agreed, by doing which the cold weather would have been avoided, consequently no loss would have resulted from the goods being frozen; therefore, the carrier was liable for the damage accruing by reason of its default which was the proximate cause of the loss, even though in the absence of misconduct on its part, it would have been relieved from the liability under the exception “loss due to the nature and inherent character of the goods.” McGraw v. B. & O. R. Co., 18 W. Va. 361; Maslin v. B. & O. R. Co., 14 W. Va. 189.
See post, “Negligence,” discussed under “Carriers of Passengers”; also, monographic note on “Negligence.”
2. Beginning and Ending or Liability as a Common Carrier.—As a general rule a carrier’s liability as a common carrier, for the safety of the goods tendered toil for transportation, commences at the time of the delivery of such goods to it for immediate transportation. Acceptance may be either actual or constructive. And in order to charge a railroad company or other carrier with liability for the loss of, or injury to, goods which had been tendered for carriage and delivery by the .shipper or his agent, an actual or implied acceptance by the carrier must be shown. Southern Exp. Co. v. McVeigh, 20 Gratt. 264.
The delivery must be such as to place the goods in the custody and under the control of the carrier, and not merely in his vehicle, or other conveyance; so that if they are really in charge of the owner's servants, although they may be in the carrier’s wagon or vessel, the carrier is not answerable. Southern Exp. Co. v. McVeigh, 20 Gratt. 264.
Andas the liability of a common carrier thus begins with the delivery of the goods to it, so it continues until a proper delivery of the goods by it; for it is bound, not only to carry them to their destined place, but also to deliver them there to the bathee or as he may direct, else he must deposit them in a reasonably safe warehouse after the consignee has had a reasonable time in which to call for them and take them away. B. & O. R. Co. v. Morehead, 5 W. Va. 293. And as to the duty of notifying the consignee upon the arrival of the goods at the end of their destination, it is held in B. & O. R. Co. v. Morehead, 5 W. Va. 293 (1872), that it is the duty of the carrier to tender delivery, or at least to notify the consignee of his readiness to deliver ; and if the place of destination cannot be reached so as to make the delivery, the carrier should not only take care of the goods, but also notify the consignor or owner within a reasonable time, of his inability to make the delivery. and thereafter it will be liable only as a bathee. Yet in Berry v. W. Va. & P. R. Co., 44 W. Va. 538, 30 S. E. Rep. 143 (1898), it is held, thatthe railroad company is not required to give notice to the consignee of the arrival of the goods, but he must look out for their arrival.
The duty of the carrier to notify the consignee upon the arrival of the goods which was decided in the affirmative in B. & O. R. Co. v. Morehead, 5 W. Va. 293, was urged in the case of Berry v. W. Va. *370 & P. R. Co., 44 W. Va. 538, 30 S. E. Rep. 143, and B. & O. R. Co. v. Morehead was cited as authority for the status of the law in West Virginia.
The court in the Berry Case, reviewing the former decision, said: “Railroad Co. v. Morehead, 5 W. Va. 293, seems to hold that notice is necessary, but it seems against the better authorities, and based on exceptional circumstances on account of inability to deliver at the point of destination.” In Virginia, however, this question is set at rest by statute. It is provided by the Virginia Code, Acts 1891-’92, p. 965, Pol. Supl., § 1297 a, that it shall be the duty of every company upon the arrival of freight shipped to any of its depots or stations to notify the consignee by mail or otherwise when such freight is ready for delivery and give a reasonable time for the removal of the same, and make due allowance for its class and for bad weather and holidays. In West Virginia, it is held that the removal by the consignee must be made without regard to the distance to the depot, or the means of removal or convenience of the consignee. If not made promptly, the carrier will cease to be liable as such. And what is a reasonable time for the removal of the goods by the consignee from the railroad warehouse is a question of fact, under all the circumstances for the jury; but, where the facts are clear and undisputed, it is a question of law for the court. Berry v. W. Va., etc., Co., 44 W. Va. 538, 30 S. E. Rep. 143. However, a railroad company is still under liability for a reasonable time as a common carrier while the goods are in the warehouse, but after a reasonable time elapses it is only under liability as a warehouseman. Berry v. W. Va., etc., Co., 44 W. Va. 538, 30 S. E. Rep. 143.
And a carrier receiving lumber for shipment to Europe was held liable on its bill of lading for lumber lost after placing it on the pier of the railway company and under its exclusive control. Lewis v. C. & O. Ry. Co. (W. Va. 1900), 35 S. E. Rep. 908.
In respect to mere delay of delivery, however, the carrier stands on the same footing as other bathees of its class, that is for the mutual benefit of both parties ; and' is answerable in respect to default only for ordinary neglect and may, therefore, excuse itself for such delay on the score of accident or misfortune, without its default, as by adverse winds, freezing of water, founderous roads and the like. See, in this connection, 3 Min. Inst. (2d Ed.) 276, etc. See also, ante, “Acceptance and Delivery of Goods”; “Delay in Transportation.”
It should be observed, however, that a drayman authorized to haul a merchant’s goods from the depot is not, from that consideration merely, an agent whose knowledge of arrival of goods will be notice to the merchant. Berry v. W. Va. & P. R. Co., 44 W. Va. 538, 30 S. E. Rep. 143.
When an Express Company Accepts in Capacity of Carrier.—Moreover, when goods are delivered to parties to be forwarded and transported, and these parties are expressmen, and receive compensation for forwarding and transporting, the goods are in their custody as carriers. Thus, the owner of certain goods about to arrive at the depot of a railroad station in Charlotte, North Carolina, wished them to be carried from thence to Richmond, Virginia, and an express company, by their agent at Charlotte, undertook to remove and deposit the goods in their warehouse as soon as possible on the arrival of the goods at the depot in Charlotte, and to carry them from Charlotte to Richmond within a reasonable time for the reward paid. The goods arrived at the depot, and the express company had notice of their arrival. It was held that it was a delivery to the express company as a common carrier. So. Exp. Co. v. McVeigh, 20 Gratt. 284.
3. Loss or Damage on Line or Connecting Carrier—When Restricted to 'Receiving Carrier’s Route.—The rule established by the federal and many of the state courts regarding the common-law liability of the carrier for goods which are delivered and transported over and beyond its own lines is, that the liability of the common carrier is restricted to its own route, unless it contracts to carry the goods to the ultimate point of destination, which is beyond its own line; and such contract is not established by proof that the carrier accepted the goods with the knowledge of their destination and named the rate for the same; and in the absence' of special contract to deliver the goods at a point beyond its line, the receiving carrier is not liable for loss or damage occurring to the goods after their delivery to the connecting carrier. Hadd v. U. S. & C. Exp. Co., 36 Am. Rep. 757; R. R. Co. v. Pratt, 22 Wall. 123; McConnell v. N. & W. R. R. Co., 86 Va. 248, 9 S. E. Rep. 1006. However, at the revision of the Code in 1887, the revisors proposed to the legislature the following provision which was adopted and incorporated into the Code of 1887, § 1295-; “When a common carrier accepts' for transportation anything directed to a point of destination beyond the terminus of his own- line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier be released or exempted from such liability by contract in writing signed by the owner or his agent; and, although there be such contract in writing, if such thing be lost or injured, such common carrier shall himself be liable therefor, unless, within a reasonable time after demand made, he shall give satisfactory proof to the consignor that the loss or injury did not occur while the thing was in his charge.” Under this section of the Code when a carrier accepts anything for transportation beyond the terminus of its own line, it assumes an obligation for its safe carriage to such destination, unless it is released from such liability by written contract signed by the owner; and it is liable to such owner for an excess of freight charged over the rate agreed to by the receiving carrier, and paid to the connecting carrier at destination, though the bill of lading issued by the receiving carrier stipulated that it should not be accountable for any "damage after the’ freight receipted for by the connecting carrier. Va. Coal, etc., Co. v. L. & N. R. R. Co., 98 Va. 776, 37 S. E. Rep. 310 (1900). And this is true though the shipment be an interstate shipment and the carrier issues to the shipper a printed bill of lading, signed by the carrier only, in which it is stated that “it is mutually agreed that the liability of each carrier as to goods destined beyond its own route shall be terminated by proper delivery of them to the next succeeding carrier." R. & A. R. Co. v. Patterson Tob. Co., 92 Va. 670, 24 S. E. Rep. 261. The constitutionality of § 1295, Va. Code 1887, was raised in R. & A. R. Co. v. Patterson Tob. Co., 92 Va. 670, 24 S. E. Rep. 261. The provision is that the company shall be liable for injuries happening on their lines to goods which the receiving carrier has accepted for transportation beyond its own line unless there be a written contract, signed by the shipper, exempting the carrier from such liability. The point made by *371 the defence was that it was a regulation of commerce among the states, and being a provision made by a state government, was therefore in conflict with the Constitution of the United States, art. 1, sec. 8, ch. 3, which provides that, “the congress shall have power to regulate commerce with foreign nations and among the several states, and with the Indian tribes.” After a full discussion the conrt of appeals of Virginia held that the provision was constitutional. And on an appeal to the supreme court of the United States the decision was affirmed. Mb. Justice White delivering the opinion of the court.
See 1 Va. Law Reg. 924 ; 3 Va. Law Reg. 907, for editorial comments upon the common law regulating this subject; the present Virginia doctrine under § 1295, and remarks upon the case above referred to in which this statute was construed by the Virginia court of appeals, and the opinion therein delivered, which was affirmed and the view adopted by the supreme court of the United States. See Va. Coal, etc., Co. v. Louisville, etc., R. Co., 98 Va. 776, 37 S. E. Rep. 310 (1900). See also, in this connection, Va. & Tenn. R. Co. v. Sayers, 26 Gratt. 328; So. Exp. Co. v. McVeigh, 20 Gratt. 264; Wilson v. C. & O. Ry. Co., 21 Gratt. 654.
4. As Warehouseman.
When Liable as Such, and Extent of Liability.—If a carrier be a warehouseman, or have a place of deposit for goods which he has transported, and he place them therein without instruction from the owner, either express, or implied from established usage or otherwise, he is still liable as carrier; but where they are so deposited in pursuance of express instructions, or in accordance with known and established usage, or where, notice having been given of their arrival, they are not removed within a reasonable time, the party's duty and obligation as carrier is at an end, and he becomes subject to the far less rigorous responsibility of a warehouseman. that is, he is answerable for ordinary or for gross neglect, according as he is or is not paid for such storage.
And if access to the assignee, and delivery of the goods at the end of the route, is prevented by a state of war, it is the carrier's duty to take care of the goods for the consignor, and notify him within a reasonable time of his inability to make the delivery, after which his liability is only that of a bathee. B. & O. R. Co. v. Morehead, 5 W. Va. 293.
But if goods are under the control of parties as forwarders and not as common carriers, and are consumed by accidental lire in a warehouse without any fault or negligence on their part, they are not liable; unless they had agreed for compensation paid, to insure them, and had fathed to do so. So. Exp. Co. v. McVeigh, 20 Gratt. 264.
However, where goods stored in a railroad -warehouse are called for by the consignee, and he is informed by an agent that they have not arrived, which prevents their removal, and they are destroyed by the burning of the warehouse, the company is liable. Berry v. W. Va. & P. R. Co., 44 W. Va. 538, 30 S. E. Rep. 143.
5. As Forwarder.—If goods are under the control of parties as forwarders and not as common carriers, and are consumed by accidental Are in a warehouse without any fault or negligence on their part, they are not liable; unless they had agreed for compensation paid, to insure them, and had fathed to do so. So. Exp. Co. v. McVeigh, 20 Gratt. 264.
6. When Privthege is Extended to Other Companies or Corporations to Carry Articles on Train.— Whenever any such corporation, company, association, or person, as is mentioned in Va. Code-1887, ch. 51, shall obtain from a railroad company the right or privthege of carrying articles upon the trains of such railroad company, and shall comply with the provisions of § 1216 relative to terms upon which foreign express companies may do business in this state, such railroad company shall not in any manner be liable, as a common carrier, for any articles thereafter delivered to such corporation, company, association, or person, for carriage as aforesaid. Va. Code 1887, sec. 1217. See, in this connection, So. Exp. Co. v. McVeigh, 20 Gratt. 264.
7. Hired Cars.—Moreover, it is settled that a railroad company cannot escape responsibility for damages resulting from its failure to provide cars reasonably At for conveyance of the particular class of goods it undertakes to carry, by alleging that the cars used for the purpose of its own transit are the property of another, who undertook to provide the necessary material to insure the fitness of the cars for such transportation. The owners of the cars will be deemed to be the agents and servants of the railroad company, and it will he held to the same liability as if it owned the cars. Thus, a railroad company which uses the cars of a refrigerator company for the transportation of fruit is under the same obligation to care for the fruit that it would have been, had the cars belonged to it. N. Y., P. & N. R. Co. v. Cromwell, 98 Va. 227, 35 S. E. Rep. 444.
8. Carrier as Agent for Connecting Carriers.— And where a carrier undertakes to carry for the whole distance, on and beyond its line, and then has a contract with a connecting carrier by which it is to accept and transport from the end of the initial carrier’s line to point of final destination, the initial carrier will be liable as principal for loss of goods on the line of the connecting carrier, and the latter will be regarded as agent of the receiving carrier. So laid down in Wilson v. C. & O. R. Co., 21 Gratt. 654 (1872).
Furthermore, by the terms of the Va. Code 1887, § 1295, connecting carriers become the agents of the initial carrier, and the latter is liable for their default in failing to transport the goods safely, or Cor charging a greater rate of freight than that agreed on. In Va. Coal & Iron Co. v. Louisville & Nashville R. Co., 98 Va. 776, 37 S. E. Rep. 310, there was no such release, and the initial carrier was bound to make good the rate of freight it had guaranteed.
Moreover, where a contract for transportation of goods over connecting lines of railway is made with one railway company as agent of the other, and the latter transports the goods and at the end of the trip presents a hill for the charges, it cannot, when sued for injury to the goods by its servants, deny the agency. N. & W. R. R. Co. v. Read, 87 Va. 185, 12 S. E. Rep. 395.
E. CONTRACTS OF EXEMPTION AND LIMITATION.
Validity—Negligence —Operation and Effect.—The general principles which regulate and govern the common-law liability of the common carrier have been more broadly and extensively treated ante, “In General.” In brief the common law holds the carrier oC goods liable for any loss or damage to the goods occurring while in his care or under his control as carrier, except, as at first held, for such *372 losses as occur by reason of the act of God, the public enemy, some default or misconduct on the part of the owner, or unless the loss be due to the nature and inherent character of the goods. In other words the common law regards the common carrier as a practical insurer of the goods, saving only a limited number of exceptions.
However, it is held that the carrier may, by a valid contract, make a caution for itself, and, to a degree limit the strictness and rigor of the terms imposed by the common law.
Thus, in Richd. & Dan. R. Co. v. Payne, 86 Va. 481, 10 S. E. Rep. 749, it is held that a valid contract to limit the liability of the carrier to a certain agreed .valuation of the property even though less than actual value, may be made by the carrier, where it is just and reasonable in its terms, and a reduced rate of freight is made a consideration for it. B. & O. R. Co. v. Skeels, 3 W. Va. 556 ; B. & O. R. Co. v. Rathbone, 1 W. Va. 87; Zouch v. C. & O. Ry. Co., 36 W. Va. 524, 15 S. E. Rep. 185 ; Maslin v. B. & O. R. Co., 14 W. Va. 180 ; Wilson v. C. & O. R. Co., 21 Gratt. 654.
And as further held, it seems to be a well settled principle that a railroad company may, by express contract or notice brought home to the employer, relieve itself from its liability as an insurer of freight or for money or valuable articles liable to be stolen or damaged, unless apprized of their character and value, or for articles liable to rapid decay, or for live animals liable to get unruly from fright and to injure themselves in that state, when such articles or animals become injured without the fault or negligence of the company or its agents. However, it cannot, by express contract, though upon the consideration of a reduced charge upon the freight, relieve itself from its liability, as carrier of the freight, for injury to or loss of the freight resulting in any degree from the want of care or faithfulness of themselves or their agents. Va. & Tenn. R. Co. v. Sayers, 26 Gratt. 328 ; Brown v. Adams Express Co., 15 W. Va. 812; Berry v. W. Va. & P. R. Co., 44 W. Va. 538, 30 S. E. Rep. 143. The latter part of the proposition is confirmed in Virginia by statute, Va. Code 1887, § 1296, providing that “no agreement made by a common carrier for exemption from liability for injury or loss occasioned by his own neglect or misconduct, shall be valid.”
Still, it is of importance, that upon the terms and conditions set forth in § 1295 of the Code, a common carrier may limit its liability ‘for freight to such damages as result from its negligence prior to delivery to its connecting carrier. When such contract has been made, it is for the jury to determine from the evidence, under proper instructions from the court, whether or not the damage or inj ury complained of occurred while the freight was in its possession or upon its line of road. Norfolk, etc., R. Co. v. Reeves, 97 Va. 285, 33 S. E. Rep. 606.
In West Virginia, however, the authorities conflict regarding the proposition that a common carrier can by special contract exempt itself from loss caused by its negligence. Thus in the first case involving the point, B. & O. R. Co. v. Rathbone, 1 W. Va. 87, it was held, that a common carrier could diminish and restrict its common-law liability by special contract; and could absolve itself in this manner from all liability resulting from every degree of negligence however gross, if it falls short of misfeasance or fraud, provided the terms and language of the contract are so clear and definite as to leave no doubt as to the intention of the parties.
But in the subsequent case of Maslin v. B. & O. R. Co., 14 W. Va. 180, the Rathbone Case was directly overruled, the court holding that a common carrier cannot exempt itself from loss and damage, which has in any degree been caused by the negligence or misfeasance of itself or its servants. Commenting upon the Rathbone Case, GREEN, J., said: “I have reviewed the authorities at some length, because there is a decision of the supreme court of appeals of the state of West Virginia, which is in conflict with the views I have expressed and with the great weight of authority. In the case of the Baltimore & Ohio Railroad Co. v. Rathbone, 1 W. Va. 87, the court decides: ‘That it is competent for a common carrier to diminish and restrict his common-law liabilities by special contract; and that he may, by express stipulations, absolve himself from all liability resulting from any and every degree of negligence however gross, if it fall short of misfeasance or fraud, provided that the terms and language of the contract are so- clear and definite as to leave no doubt, that such was the understanding and intent of the parties.’
“This case was decided during the war. It was ar-. gued at some length, and no doubt all the authorities then accessible were examined by the counsel and court; yet few authorities were then accessible. The authorities referred to on this point by counsel were only the English and New York cases and the decisions of the supreme court of the United States up to that time. The court in its opinion cites but a single case. We have seen, that the recent New York and English cases are in conflict with the great weight of authority. A decision of such importance rendered by a court under such disadvantageous circumstances, and in conflict with both reason and the great weight of authority, though it be our own court, we cannot follow.” Berry v. W. Va. & P. R. Co., 44 W. Va. 538, 30 S. E. Rep. 143 ; Zouch v. C. & O. Ry. Co., 36 W. Va. 524, 15 S. E. Rep. 185.
Moreover, where a shipper enters into an agreement with a carrier as to the value of the property shipped, and receives the benefit of low rates by reason of placing a low valuation upon the property, he is estopped from claiming or recovering any other and higher valuation after the loss occurs, al-' though the loss may be a result of negligence on the part of the carrier, provided the same is not gross, wanton or wilful. But such a contract will not be upheld as exempting the carrier from all liability but as limiting the liability in case of loss to the amount fixed by agreement. Zouch v. C. & O. Ry. Co., 36 W. Va. 524, 15 S. E. Rep. 185.
As to the construction of the contract, the term, “at the owner’s risk,” in a bill of lading which is declared to be a special contract, taken in connection with other stipulations therein, limits the carrier to such loss or damage only as might result from ordinary neglect; which is defined to mean that want of care and diligence which prudent men usually bestow on their own concerns. B. & O. R. R. Co. v. Rathbone, 1 W. Va. 87.
Further, in this connection, it should be observed, that a common carrier cannot limit his common-law responsibility by any general notice, though knowledge of such general notice may be brought home to the consignor before or at the time he applied to have his goods transported. Brown v. Adams Express Co., 15 W. Va. 813.
Moreover, where a common carrier relies on a contract of exemption, he must not only bring himself within the exemption but show that no negli *373 gence of his contributed to the result. Brown v. Adams Express Co., 15 W. Va. 813.
And, again, a common carrier does not by limiting his common-law liabilities by special contract thereby become a private carrier; and if loss is sustained, the burden of proof is on him to show, not only that such loss arose from a cause from which he was exempted from responsibility by the terms of his special contract, but also that it arose from no negligence or misfeasance of himself or his servants. Brown v. Adams Express Co., 15 W. Va. 812; Maslin v. B. & O. R. Co., 14 W. Va. 180.
P. FREIGHT, DEMURRAGE AND OTHER CHARGES.
1. Statutory Regulations.
Long and Short Haul.—Jt is unlawful for any common carrier doing business in this state to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property under substantially similar circumstances and conditions for a shorter than for a longer distance oyer the same line in the same direction, the shorter being included within the longer distance. But this is not to be construed as authorizing any common carrier to charge and receive as great compensation for a short as for a longdistance: provided, however, that upon application to the railroad commissioner such common carrier may in special cases, after investigation by the railroad commissioner, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property, and the commissioner may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this act. Va. Code 1887, § 1297; Pel. Supl. (1900), § 1297 a.
Special Rates—Rebates—Drawbacks—Discrimination. —If any common carrier subject to the provisions of the Act of the Legislature, ch. 55, Va. Code 1887, Pol. Supl. (1900), § 1297 a, shall directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any other person or persons a greater or less compensation for any service rendered or to be rendered in the transportation of passengers or property subject to the provisions of this act than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is prohibited and declared to be unlawful.
Validity of Charges for Detention after a Reasonable Time.—Va. Code 1887, §§ 1202, 1203, allows railroad companies to make a certain charge for the shipment of produce and other articles; and for the weighing, storage, and delivery of articles at any depot or warehouse of the company ; a charge may also be made, not exceeding the ordinary warehouse rates charged in the city or town in which, or nearest to which, the depot or warehouse is situated ; but they forbid a railroad company to charge or receive any fee or commission other than the regular transportation fees, storage, and other charges authorized by law for manifesting, receiving, or shipping any goods or other articles for transportation on such railroad. Construing these sections, it was held in N. & W. R. R. Co. v. Adams, 90 Va. 393, 18 S. E. Rep. 673, that the statutes do not forbid a charge of $1.00 per day for the detention of a car more than 72 hours after notice to the consignee of its arrival. Lacy and Hinton, JJ., dissenting.
2. Preferences.—And it shall be unlawful for any common carrier, subject to the provisions of the act regulating common carriers to make or to give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation. or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. Va. Code 1887, ch. 55, Pol. Supl., ch. 55. See these references for general provisions relating to common carriers.
3. When Entitled to Freight and Demurrage.
Contract for Freight and Demurrage Distinct and Independent.—By charter party of affreightment, a plaintiff engaged their vessel to take a cargo for defendants to a designated port, at a specified freight; and it was agreed that twenty running days should be allowed for unloading and discharging the vessel after her arrival at the port of destination, and that for every additional day’s detention, defendants should pay $50 demurrage. It was held that the stipulation for payment of demurrage did not affect the contract for freight, and if the consignee fathed to unload and discharge the vessel within the lay days allowed, there being no impossibility of his doing so. and afterwards, while the vessel was detained on demurrage, the vessel and cargo be lost without the default of the master or mariners, the plaintiffs were entitled to recover the freight, as well as the demurrage. Brown v. Ralston, 9 Leigh 532.
Avoiding Capture—Vessel Stranded.—And if in order to avoid capture by the enemy, the master before he reaches the port of destination, strands the vessel; which is thereby lost, but the cargo saved, the cargo shall not contribute to repair the loss of the ship, but the owner of the ship is entitled to freight and salvage. Eppes v. Tucker, 4 Call 346.
Vessel Condemned by Foreign Tribunal—Fraud of Owner.—But freight (though by the terms of the charter party, payable monthly, if required) is not to be recovered, where the voyage is never completed, but the vessel is condemned, by a foreign tribunal, in consequence of a fraud attempted by one of the owners intrusted by the rest with the care of the vessel, though no proof appear of their assenting to such fraudulent act. Hadfield v. Jameson, 2 Munf. 53.
Vessel Goes to Sea without Taking a Cargo Agreed upon.—And a shipper of corn having agreed to deliver it on board with no unreasonable delay, the captain of the vessel applied for it on Sunday, and, no person being ready to deliver it, would not wait until Monday, but went to sea without it. The ship owner was not entitled to dead freight on the quantity not shipped; but, on the contrary, was bound to make compensation to the other party, for the loss sustained, in consequence of the captain’s not taking the full quantity on board. Dunbar v. Buck, 6 Munf. 34.
Merchantman Having Letter of Marque—To What Extent the Enemy May Be Chased—Freight Allowed.— But a merchantman having a letter of marque, and having taken goods on freight, may chase an enemy in sight, but cannot justify going out of her course to cruise. If, in the former case, she engage the enemy, and be so injured as to compel her to put *374 into a port, other than that of her destination, she is entitled to freight. But if the goods be not after-wards sent by the ship owner to the port of delivery, she is entitled only to freight pro rata itineris, unless prevented from doing so by the freighter. Hooe v. Mason, 1 Wash. 264. See, in this general connection, Galt v. Archer, 7 Gratt. 307.
4. When Freight Is Due.—It is a general principle that freight is not due until it is earned by a delivery of the cargo unless the delivery is prevented by default of the shipper or his agents. And if it becomes impossible to deliver the cargo, from causes not arising from the default of either party, the shipper will be excused from paying the freight. Brown v. Ralston, 4 Rand. 504.
5. Set-Oee.—And a consignee cannot set off against a carrier’s charges the amount of damages sustained by the goods from an act of God. Galt v. Archer, 7 Gratt. 307.
6. Recovery.—An action at law may be maintained by a carrier to recover his charges for transportation. The usual form of action at common law is assumpsit. Thus, in Galt v. Archer, 7 Gratt. 307, a common carrier contracted to deliver a crop of wheat at an agreed price per bushel. A large portion of the crop was delivered in good order; but from the unavoidable effects of a storm, a small part was delivered in a damaged condition, and another small portion was lost. It was held, in an action by the carrier for the freight, that he was entitled to recover under the common indebitatus count, the agreed price for the whole quantity so delivered or lost. Seeposi, “Actions.”
7. Excessive Charges.
Recovery from Carrier.—Under Va. Code, § 1295, providing that, when a common carrier accepts anything for transportation beyond the terminus of its own line, it shall assume an obligation for its safe carriage to such destination, unless it is released from such .liability by a written contract signed by the owner, a carrier accepting freight for, transportation beyond its lines, and who has obtained no such written release signed by the owner, is liable to such owner for an excess of freight charged over the rate agreed to by the receiving carrier, and paid to the connecting carrier at destination, though the bill of lading issued by the receiving carrier stipulated that it was not to be accountable for any damage after the freight was receipted for by a connecting carrier. Va. Coal, etc., Co. v. Louisville & N. R. Co., 98 Va. 776, 37 S. E. Rep. 310 (1900).
And in W. Va. Transp. Co. v. Sweetzer, 25 W. Va. 434, the court said that, where, generally speaking, the only outlets for the transportation of oil is over a certain railroad, and an excess of legal freight appears to have been paid in order to secure transportation over it, though paid after each shipment, it is compulsory, and can be recovered.
And a repayment of freight charges in excess of those lawfully chargeable by a railway company need not be demanded before bringing suit to recover back'-the excess. W. Va. Transp. Co. v. Sweetzer, 25 W. Va. 434.
And in an action against a carrier for charging an illegal freight rate, if the declaration states the weight of the freight, the time and place where delivered to defendant for transportation, and places to which it was to be transported, distance, the amount which was demanded and received by defendant and that it was more than was lawful, contrary to the statute in such case made and provided, it is a sufficient notice of the cause of action to the defendant to enable it to make ali just and proper defences. Hart v. B. & O. R. Co., 6 W. Va. 336. See post, “Actions.”
IV. CARRIERS OF UVE STOCK.
A. STATEMENT OF DUTY.
1. Degree of Care and Liability in General.— An exception is made to the strict liability to which a common carrier is held by the common law for the transportation of goods intrusted to it in the case of a shipment of livestock. It would be an unjust and unreasonable imposition to hold a carrier responsible to the same degree for the safety of animate as is done in the case of inanimate property. Carriers of live stock are liable as common carriers for damages or inj uries thereto arising during the transportation, except such as, without the fault or negligence of the carrier, result from the vitality of the freight; that is to say, the nature and propensity of animals to inj are themselves or each other, their unruliness, restiveness, fright, viciousness, kicking, or goring, etc. The carrier is relieved from liability for injury from such causes if he has provided suitable means of transportation and exercised that degree 'of care which the nature of the property required, or has not otherwise contributed to the injury. Maslin v. B. & O. R. R. Co., 14 W. Va. 180; Hutchinson on Carriers, § 217 et sea. Whthe common carriers are insurers of inanimate goods against all loss and damage except such as is inevitable or caused by the public enemy, or default of the owner, they are not insurers of animals against injuries arising from their nature and propensities, and which could not be prevented by foresight, vigilance and care. See ante, “Carriers of Goods.”
2. CONEINEMENT AND TREATMENT IN TRANSITU.
What Classes of Animals Included.—Section 4386 of tb e Revised Statutes of the United States forbidding any railroad company which carries “cattle, sheep, swine, or other animals” from keeping the same confined in its cars for a longer period than twenty-eight consecutive hours without unloading the same, watering, and feeding, for the period of at least five consecutive hours, applies to a shipment of horses, mules, and all animals which may suffer for want of food, water or rest during such transportation. And that the two cars, in which 43 horses were shipped, were two feet longer than ordinary cars with racks, and troughs in which to feed and water, is insufficient to show that the cars were such that the cattle could have “proper food, water, space, and opportunity for rest,” as provided by Rev. St. U. S. § 4388, so as to relieve the carrier from the duty of unloading them at stated intervals to rest, water and feed. C. & O. Ry. Co. v. Amer. Exch. Bank, 92 Va. 495, 23 S. E. Rep. 935.
Negligence in Allowing Stock to Drink Salt Water.— But where a contract by which lambs were shipped provided that the company should not be liable for injury to the stock until they were “loaded into the car, and the car dqor fastened by the conductor,” it was held that this did not exempt the carrier from injury caused by its negligence in allowing the lambs to drink salt water before they got on the car. N. & W. R. Co. v. Harman, 91 Va. 601, 22 S. E. Rep. 490.
B. LOSS CAUSED BY OWNER’S DEFAULT.
Improper Interference.—In view of these exceptions, it was held that a common carrier will not be liable for injury to a horse occasioned by the improper or unwarrantable interference of the owner or his *375 agent, in the management of the car by the servants or employees of the company. Roderick v. Railroad Co., 7 W. Va. 54.
Contributory Negligence.—If the owner’s contributory negligence is the proximate canse of the accident and loss of his live stock, the general principles would apply, and his recovery be barred.
But the fact that a shipper in unloading horses, allowed some of them to go out without leading them, does not show, as a matter of law, that he was guilty of contributory negligence. C. & O. R. Co. v. American Exch. Bank, 92 Va. 495, 23 S. E. Rep. 935.
And in Norfolk & W. R. Co. v. Sutherland, 89 Va. 703, 17 S. E. Rep. 127, the plaintiff’shipped cattle over the defendant railroad company’s line to a point on another line, the bill of lading providing that he should load, unload, and transfer them at his own cost. At a point on defendant’s line the cattle were unloaded and fed and reloaded by defendant, though the plaintiff was present and willing to do so, and, in reloading, some of the plaintiff’s cattle were placed in the cars of another shipper. It was held that the mistake was the company’s, and that the owner of the stock was not guilty of contributory negligence, though the loss occurred on the line of the connecting carrier, since it was the result of its own negligent act, committed before the cattle were delivered to the connecting carrier. See post, under “Carriers of Passengers,” the subject “Negligence.” See also, Roderick v. Railroad Co., 7 W. Va. 754.
C. CONTRACTS OF EXEMPTION AND LIMITATION.—And it seems a railroad company may, by express contract or notice brought home to the employer, relieve itself from its liability as insurer of live animals liable' to get unruly from fright and to injure themselves in that state, when such animals become injured without the fault or negligence of the company or its agents. Va. & Tenn. R. R. Co. v. Sayers, 26 Gratt. 328. See ante, “Liability.”
Thus, a common carrier may, by special agreement, just and reasonable in itself, and fairly made between itself and the consignor of a horse at the time of shipment, fix the value of such horse, upon consideration that the rate of charges for transportation shall be commensurate with the value thus ascertained, and may also limit its liability in case of loss to the amount thus agreed upon, even though the loss may be the result of negligence on the part of the carrier, provided the negligence be not gross, wanton, or willful; but cannot wholly exempt itself from liability for loss resulting from negligence. Zouch v. C. & O. Ry. Co., 36 W. Va. 524, 15 S. E. Rep. 185.
But by the better rule and weight of authority the carrier cannot make a valid contract to exempt itself from liability for loss or damage arising from its own negligence. Va. & T. R. R. Co. v. Sayers, 26 Gratt. 328 ; Richd., etc., R. Co. v. Payne, 86 Va. 481, 10 S. E. Rep. 749 ; Johnson v. Richd., etc.. R. Co., 86 Va. 975, 11 S. E. Rep. 829; N. & W. R. Co. v. Harman, 91 Va. 601, 22 S. E. Rep. 490 ; C. & O. R. R. Co. v. Am. Exch. Bank, 92 Va. 495, 23 S. E. Rep. 935. See also, Zouch v. C. & O. Ry. Co., 36 W. Va. 524, 15 S. E. Rep. 185; Maslin v. B. & O. R. Co., 14 W. Va. 193. For a fuller discussion of this particular point upon which the West Virginia courts disagree, and the general principles governing the subject of common carriers of goods, which in general apply with equal force to the subject in hand, reference is made to “Carriers of Goods,” treated ante.
V. CARRIERS OF PASSENGERS.
A. IN GENERAL.
Who Is a Common Carrier of Passengers.—A common carrier of passengers is one who undertakes for hire to carry all persons indifferently who may apply for passage, so long as there is room, and there is no legal excuse for refusing. Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. Rep. 242. This definition includes electric railway companies. Richd. Ry. & E. Co. v. Bowles, 92 Va. 738, 24 S. E. Rep. 388; Danville Street-Car Co. v. Payne (Va. 1896), 24 S. E. Rep. 904; Fisher v. W. Va. & P. R. Co., 39 W. Va. 366, 19 S. E. Rep. 578, 23 L. R. A. 758. Also, stage coaches. Farish v. Reigle, 11 Gratt, 697. See Maslin v. B. & O. R. Co., 14 W. Va. 180.
See ante, I. “In General,” for more comprehensive definition, authorities, and comparison of characteristics of carriers of passengers, live stock and goods.
Duty to Have Passenger Cars Open at the Termini.— It shall be the duty of every railroad company in this state to have at the termini of its road passenger cars open for admission of passengers, and baggage cars for the reception of baggage, at least thirty minutes before the advertised hour of departure of every passenger train. Va. Code 1877, § 1297, Pol. Supl., §1297 a.
Who Conservator of the Peace on a Train.— The conductor of every train of railroad cars shall have all, the powers of a conservator of the peace while in charge of the train. W. Va. Code 1900, ch. 145, § 31; Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. Rep. 243.
B. RELATION EXISTING BETWEEN PASSENGER AND CARRIER.
1. Who May Become a Passenger.—It is the lawful right of every citizen prima facie to become a passenger of a railway train. N. & W. R. R. Co. v. Galliher, 89 Va. 689, 16 S. E. Rep. 935.
2. Who Is Entitled to the Protection ov a Passenger.—But neither the purchase of a ticket nor any entry into the car is essential to create the relation of carrier and passenger. Thus, where a person enters a ticket office of a railway company to buy a ticket he is entitled to the protection of a passenger, even though the agent refuses to sell him a ticket. N. & W. R. Co. v. Galliher, 89 Va. 639, 16 S. E. Rep. 935.
And although a railroad company requires fare for all children over five years old, the fact that a father purchases no ticket for his child six years old, will not bar recovery for injury causing his death; and whether or not he knew that a ticket was required is immaterial. N. & W. R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454.
So a person having a ticket for passage upon a railroad, who boards a freight train which does not carry passengers believing the ticket good on that train, is to be treated as a passenger, and is not a trespasser. Boggess v. C. & O. Ry. Co., 37 W. Va. 297, 16 S. E. Rep. 525.
And a mail agent traveling on a passenger train in the discharge of his official duties is a passenger. N. & W.~R. Co. v. Shott, 92 Va. 34, 22 S. E. Rep. 811.
Moreover, where a common carrier transports cattle for hire, and a free pass is given to the shipper so that he can take care of the cattle, the person traveling on the free pass is a passenger, and the carrier cannot by special contract exempt itself from liability for its own negligence or that of its servants. Maslin v. B. & O. R. Co., 14 W. Va. 180.
*376 3. When Presumed to Be a Passenger..—And every one riding in a railroad car is presumed prima 'facie to be there lawfully, as a passenger having paid, or being liable when called on to pay, his fare. Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. Rep. 243.
4. Treatment and Protection of Passenger.— It is the duty of a carrier of passengers to treat his passengers properly and respectfully, and to carry them safely; and though not an insurer, yet the law, based upon principles of public policy, is strict and exacting in requiring performance; and public policy is not likely to exact any less stringent rule in this age, when all the world is carried to and fro daily by instrumentalities vast in power and force, owned by mere corporate entities, and which are almost as dangerous as useful, unless there be. constant care and vigilance, and greater skill employed in their management and disposition.
But, as stated, the common carrier of passengers is not an insurer of their safety or of their proper treatment, but is liable for their injury or improper treatment, due to the negligence or willful misconduct of itself or of its servants while engaged in executing the contract. Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. Rep. 243.
However, in order that a passenger ¿may hold a carrier liable to the full measure of its responsibility for safe carriage, he must conform to all the reasonable rules made by the company looking to the safety of its passengers. Downey v. C. & O. Ry. Co., 28 W. Va. 732. This subject is treated more at length, with fuller array of authorities, post, “Injuries to Passengers.”
5. Right to Make Rules and Have Them Obeyed. —A carrier, however, is entitled' to make rules for conducting its affairs, if they be reasonable, not conflicting with'any legal liability, and not exempting from liability for negligence or improper conduct. If the rules be such as described, they are binding on persons dealing with the carrier when notified thereof. The reasonableness of a rule is a question' of law for the courts. N. & W. R. Co. v. Wysor, 82 Va. 250.
It is a reasonable rule that it will only carry as baggage the passenger’s wearing apparel, and upon refusal of a passenger to certify that “his trunk contained nothing except wearing apparel,” the passenger is not entitled to damages for the company’s refusal to carry such trunk. N. & W. R. R. Co. v. Irvine, 84 Va. 553, 5 S. E. Rep. 532. And a passenger in the habit of carrying merchandise in his trunk, against carrier’s rules, may be required to prove contents as condition of receiving and checking it. N. & W. R. Co. v. Irvine, 85 Va. 217, 7 S. E. Rep. 233.
C. BARES AND TICKETS.
1. The Ticket.
As Evidence of a Contract.—Passenger tickets do not generally set out the full contract between the parties, and are for the most part mere memoranda, importing a contract on the part of the carrier to carry the passenger from one given point to another, in the manner in which the holders of such tickets are usually carried. As said in one case, the real contract between the carrier and the passenger is usually made before the ticket is delivered, and where it does not purport to be the complete agreement between the carrier and the passenger, it has been held that suppletory evidence is competent to show what was the real contract indicated by the ticket. In this incomplete form the tickets'are no more than the tokens or checks which the bailor may take from the common carrier as evidence of his receipt of goods for the purpose of being carried, and which would not be held to preclude the- bailor from showing a special contract with the carrier as to the terms upon- which they had been accepted. Notwithstanding this, however, the ticket accepted by the passenger must usually, as will be seen, be treated as conclusive evidence 'of the passenger’s rights, as between the passenger and the conductor, leaving the passenger to his action against the carrier if he has not been given such a ticket as his contract called for. But when the passenger has bought and been given a ticket unlimited upon its face, evidence of rules and regulations of the carrier tending to defeat the apparent right conferred by the ticket is not admissible if the passenger was not informed of them. Neither can he be bound, by accepting it, by limitations or conditions printed upon the back of the ticket, which he did not see or know of, and to which his attention was not called at the time he accepted it. On the other hand, when such tickets profess to set out or contain the terms of a special contract between the carrier and the passenger, as they frequently do, there is no reason why they should not be held as conclusive upon the passenger as a bill of lading or the receipts of the common carrier are upon the bailor of goods. Hutchinson on Carriers, § 580.
Limited to What Passage.—A ticket limited on its face to certain time for passage, is not good after expiration of such. time. Grogan v. C. & O. Ry. Co., 39 W. Va. 415, 19 S. E. Rep. 563.
And as between a person who buys a ticket bearing a date prior to the purchase, and the company, he is entitled to a passage on the date of purchase, the ticket being limited to one day from date of sale. Trice v. C. & O. R. Co., 40 W. Va. 271, 21 S. E. Rep. 1022.
Demand for Ticket or Fare.—A railroad conductor may demand a ticket as evidence of a passenger’s right of passage, and on failure to produce it may demand payment of fare; and on failure to pay it may lawfully eject the passenger from the train using no more force than necessary. MacKay v. O. R. R. Co., 34 W. Va. 65, 11 S. E. Rep. 737. See post, “Ejection”; also, “Actions.”
2. Schedules.
Duty of Carrier to Print and flake Public Schedules of Rates and Fares.—Every common carrier subject to the provisions of § 1297, Va. Code 1887, shall print and keep open to public inspection schedules showing the rates and fares and charges for the transportation of passengers and property which any such common carrier has established and which are in force at the time upon its route. The schedules printed as aforesaid by any such common carrier shall plainly state the places upon its route between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately the terminal charges and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates and fares-and charges. Such schedules shall be plainly printed in large type, and copies for the use of the public shall be posted in two public and conspicuous places in every depot, station, or office of such carrier where passengers of freight respectively are received for transportation in such form that they shall be accessible to the public and can be conveniently inspected. Va. Code 1887, § 1297; Pol. Supl. (1900), § 1297.
*377 3. Advancements and Reductions.
Public Notice Required.—No advance shall he made in the rates and fares and charges which have be.en established and published as required by the Code, by any common carrier in compliance with the requirements of § 1297. except after ten days’ public notice, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the increased rates and fares and charges will go into effect; and the proposed changes shall be shown by printing new schedules in force at the time and kept open for public inspection. Reductions in such published rates, fares, or charges shall only be made after three days’ previous public notice, to be given in the same manner that notice of an advance in rates must be given. Va. Code 1887, § 1297, Pol. Supl. (1900), § 1297.
Effect of Demanding or Receiving a Greater or Less Compensation Than Schedule Rate.—And when any common carrier shall have established and published its rates and fares and charges in compliance with the provisions of the Code, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or for any services in connection therewith than is specified in such published schedules of rates and fares and charges as may at the time be in force. Va. Code 1887, § 1297; Pol. Supl. (1900), § 1297.
When a Carrier Hay Reduce or Waive Charges.—But it is provided that nothing in the general act upon carriers shall apply to the carriage, storage, or handling of property free or at reduced rates for the United States, state, or municipal governments, or for charitable purposes, or to or from fairs and expositions for exhibition thereat, or the free carriage of destitute and homeless persons and the necessary agents employed in such transportation, or to mileage, excursion, or commutation passenger tickets, or to persons in charge of live stock being shipped from the point of shipment to the point of destination and return; nothing in this act shall be construed to prohibit any common carrier from giving reduced rates to ministers of religion or to indigent persons, or to inmates of the Confederate homes or state homes for disabled soldiers, and of disabled soldiers and sailors, including those about to enter and those returning home after discharge, or carrying the same free; nothing in this act shall be construed to prevent common carriers from giving free" carriage to their own officers, employees and members of their families, or to prevent the principal officers of any railroad company or companies from exchanging passes or tickets with other railroad companies for their officers, employees and members of their families; and nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies; provided, that no pending litigation shall in any way be affected by the act. Va. Code 1887, § 1297; Pol, Supl. § 1297 a.
4. Opening of Ticket Office.—And it is the duty of every railroad company in this state to have its ticket offices opened and its agents for the sale of tickets in attendance at least thirty minutes before the advertised hour of departure of every passenger train. Va. Code 1887, § 1297; Pol. Supl. (1900), § 1297.
5. Rights in Connection with Ticket.

a. Of Passenger.

Erroneous Statement by Carrier as to Connection.— Where a person purchased a ticket ou the statement of the ticket agent that the train she was about to take made close connection at a certain point with another train going to her place of destination, which statement was erroneous, and such person, on arriving at such connecting point, was obliged to wait some time for such connecting train, and thereupon, in the face of a storm, and in her delicate state of health, procured a buggy, and drove over a rough road to her father’s house, she could not recover for the injuries resulting from such drive. Fowlkes v. Southern Ry. Co., 96 Va. 742, 32 S. E. Rep. 464.
Passenger Directed into Wrong Car.—But where a passenger who has procured a ticket for himself and family is, by a negligent mistake of one of the employees of the railroad, directed into a car which is cut off and left standing when the train leaves,— one of his children with him being sick at the time, carrying off his baggage, including the child’s clothing and medicine, part whereof was lost, the father is entitled to compensatory but not to punitive damages. N. & W. R. Co. Lipscomb, 90 Va. 137, 17 S. E. Rep. 809.
Wrong Date Stamped upon Ticket.—And where a ticket agent selling a mileage ticket good for one year only, stamps upon it as the date of issue a date one year before the date of issue, the passenger can ride upon such book, and if refused, and rejected for nonpayment of fare, he can recover damages. Trice v. C. & O. R. Co., 40 W. Va. 271, 21 S. E. Rep. 1022.
Ticket Sold to Station at Which There Is No Regular Stop.—Moreover, when a railroad company has sold a passenger a ticket to a particular station it has no right to refuse to stop its train there, and is liable for such refusal. And a ticket irom one designated station to another is good for any intermediate station at which, by the regulations of the company, the train regularly stops. R., F. & P. R. R. Co. v. Ashby, 79 Va. 130.
Ticket Wrongfully Taken Up.—Furthermore, where a passenger’s ticket is wrongfully taken up by one conductor, and another conductor in charge of the train demands his ticket and ejects him. plaintiff can recover whatever damages he shows himself entitled to recover, either on the contract, or ex delicto. Lovings v. N. & W. Ry. Co. (W. Va. 1900), 35 S. E. Rep. 962.
Detaching Coupons Wrongfully.—In N. & W. R. Co. v. Wysor, 82 Va. 250, a plaintiff purchased from the defendant a commutation coupon book, which had attached to it a condition that coupons should be detached by the conductor in collecting fares: and should not be accepted if detached from the book. The condition was known to and accepted by the passenger, but he insisted on tearing out the coupon himself, against the remonstrance of the conductor that such coupons would not be accepted. The conductor refused to accept them, and, on the passenger’s refusal to allow the conductor to tear out other coupons, the conductor put him off the train. In an action for ejectment the jury awarded plaintiff $550 damages. The court held that the verdict was for punitive damages, and should have been set aside, there being no evidence of any wilful and malicious purpose on the part of the defendant, or any neglect of duty.
Performance of Requirements Concerning Signing and Identification.—But if a railroad ticket provides that when presented to the conductor the passenger shall sign his name thereto and “otherwiseidentify” himself as original purchaser, the conductor is not entitled, after the passenger has offered to sign the *378 ticket, to refuse such offer and require the passenger to “identify” himself, and to eject him from the train for refusing to do so, and the carrier, upon ratifying the acts of the conductor is liable to the passenger in exemplary damages. N. & W. R. Co. v. Anderson, 90 Va. 1, 17 S. E. Rep. 757, 44 Am. St. Rep. 884.
b. Of Carrier.—Where a passenger, either wilfully or because he has forgotten having a ticket, does not show it, and refuses to pay fare, he cannot recover if ejected. Price v. C. & O. R. Co., 46 W. Va. 538, 33 S. E. Rep. 255. See N. & W. Ry. Co. v. Wysor, 82 Va. 250 ; N. & W. R. Co. v. Anderson, 90 Va. 1, 17 S. E. Rep, 757, 44 Am. St. Rep. 884.
And a pass issued on a false representation that the person to whom it was issued was connected with a newspaper can be cancelled. Moore v. O. R. R. Co., 41 W. Va. 160, 23 S. E. Rep. 539.
Moreover, a passenger presenting an invalid ticket after having been notified that it was invalid can be ejected. Moore v. O. R. R. Co., 41 W. Va. 160, 23 S. E. Rep. 539.
6. Annual passes.
Application for Renewal Necessary.—In Knopf v. R. F. & P. R. R. Co., 85 Va. 769, 8 S. E. Rep. 787, a railway company by contract issued to plaintiff an annual pass. On its expiration plaintiff applied for and secured a renewal. On its expiration he did not apply for another. It was held to be a question for the jury whether it was the duty of the company to issue a renewal without application.
7. Commutation Books.—The rule that coupons of commutation tickets, if detached, will not be accepted for’a passage, is reasonable. Thus where a commutation coupon book provides that the coupons must be detached by the conductor, and will not be accepted if otherwise detached, a passenger who, with knowledge of such condition detaches the coupons is not entitled to ride thereon. N. & W. R. Co. v. Wysor, 82 Va. 250.
8. Overcharges.—A railroad company-is not liable for the penalties of overcharging, under W. Va. Code 1891, ch. 54, cl. 5, where the charge was made by a conductor, unless it authorized or ratified the conductor’s'act. Hall v. N. & W. Ry. Co., 44 W. Va. 36, 28 S. E. Rep. 754.
9. Contract to Furnish Ticket.—In Knopf v. Rich., F. & P. R. Co., 85 Va. 769, 8 S. E. Rep. 787, a railway company contracted with a firm, “in consideration for a ticket entitling either member of the firm, but only one on any train, to a seat on its passenger trains.” The firm was entitled to only one ticket, to, be presented when any one member took passage.
D. INJURIES TO PASSENGERS.
l. In General.
a. Statement of Duty as to Care and Safety.—In Searle v. K. & O. Ry. Co., 32 W. Va. 370, 9 S. E. Rep. 251, the court gave among others the following instructions which were held entirely proper: “The law, in tenderness to human life and limbs, holds railroad companies liable for the slightest negligence, and compels them to repel by satisfactory proofs every imputation of such negligence. When carriers undertake to convey passengers by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence. Any negligence or default, in such cases makes such carriers liable in damages under the statute. Said railroad company is held by the law to the utmost care, not only in the management of its trains and cars, but als'o in the structure, repair, and care of the track and bridges, and all other arrangements necessary to the safety of passengers.” B. & O. Ry. Co. v. Wightman, 29 Gratt. 431. Or as stated in Va. Cent. R. Co. v. Sanger, 15 Gratt. 230, the carrier is bound to the most exact care and diligence, not only in the management of the trains and cars, but also in the structure and care of the track, and in all subsidiary arrangements necessary to the safety of the passenger. Connell v. C. & O. Ry. Co., 93 Va. 44, 24 S. E. Rep. 467. This duty to protect and carry safely is variously expressed as “utmost care,” “utmost care and diligence,” “utmost care and human foresight," or “greatest possible care and diligence.” Fisher v. W. Va., etc., R. Co., 39 W. Va. 366, 19 S. E. Rep. 578; B. & O. R. Co. v. Noell, 32 Gratt. 394; Richd. City Ry. Co. v. Scott, 86 Va. 902, 11 S. E. Rep. 404. All the authorities seem to have in view one purpose, to throw around the passenger every guard which reason and prudence would suggest as likely to shield him from accident or loss; and in exacting such protection for the person standing in the relation of passenger, the carrier is held liable for the slightest degree of negligence on its own part, or its servants or employees. However, the duty does not extend so far as to make the carrier a practical insurer of a passenger, as it is of goods or property. N. & W. R. Co. v. Williams, 89 Va. 165, 15 S. E. Rep. 522.
Its duty is to carry them safely, using the utmost care as far as human skill, diligence and foresight can reasonably be required to go. Fisher v. W. Va. & P. R. Co., 39 W. Va. 366, 19 S. E. Rep 578; Connell v. C. & O. Ry. Co., 93 Va. 44, 24 S. E. Rep. 467.
6. Source of Liability for Injuries Occurring to Passengers.—The liability of common carriers of passengers does not flow directly from the injuries sustained, but from their duty to convey their passengers in comfort and safety. They are responsible for injuries if it appear that they knew, or ought to have known that danger existed, or was reasonably to be apprehended, and did not use proper means to avert it. But a sleeping-car company is not liable for the death of-one of its passengers, at the hands of an assassin, in the nighttime, who enters its car by stealth, while traveling through a peaceable, law-abiding country. This is not a natural or probable danger, nor one to be anticipated, against which the company is expected to guard and protect its passengers. Connell v. C., etc., R. Co., 93 Va. 44, 24 S. E. Rep. 467.
c. Duty to Passenger and Mnployee Distinguished.— The difference between the degree of care which railroad companies owe to a passenger and to an employee is vast. As to the former, they are held liable for the slightest negligence; as to the latter, they are bound to use only ordinary care. N. & W. R. Co. v. Williams, 89 Va. 165, 15 S. E. Rep. 522.

d. Illustrative Cases Involving the Nonperformance of Duty to Protect from Injury.

(a) Taking on Passengers.—In N. & W. R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454, a freight train, with caboose for passengers, stopped at a certain station, and the conductor, though he saw several approaching with baggage, ordered the engineer to back the train. Without warning the train violently backed while the passengers were boarding it, fatally injuring a boy between five and six years old, standing on the end of the ties, and about to get on. It was held that the railroad company was liable.
*379 (6) In Transitu.
In Connection with the Conveyance—Class of Conveyance to Be Provided.—Carriers of passengers are bound to provide such conveyances as will best secure the safety of passengers. Farish v. Reigle, 11 Gratt. 697 ; B. & O. R. Co. v. Wightman, 29 Gratt. 431, 26 Am. Rep. 384 ; B. & O. R. Co. v. Noell, 32 Gratt. 394.
What Constitutes Negligence in Running.—The mere speed of motion of the train, or the fact that the train is “behind time,” is not, per se, evidence of negligence. N. & W. R. Co. v. Ferguson, 79 Va. 241.
And in an action for injuries to a passenger thrown from the train by a lurch caused by striking a curve, an instruction that defendant is liable if the train was run over the curve “at an unusually rapid rate of speed” is erroneous, since “unusually rapid” is not equivalent to “dangerous.” C. & O. Ry. Co. v. Clowes, 93 Va. 189, 24 S. E. Rep. 833.
Conveyance Upsetting.—3 Í a coach is upset in consequence of having too much baggage on the top, the proprietors are liable for any injury sustained by a passenger by such upsetting of the coach. And the prima facie presumption is, that it occurred by the negligence of the driver; and the burden of proof is on the proprietors of the coach, to show that there was no negligence whatsoever. Farish v. Reigle. 11 Gratt. 697, 62 Am. Dec. 666.
Condition of Premises.
Track—Obstructions. —The duty of a railroad company to employ the utmost care and diligence in guarding obstructions on the track is clearly embraced within its warranty to carry their passengers safely, so far as human care and foresight can go. Because railroad companies conveying passengers, combining in themselves ownership as well of the road as of the cars and locomotives, are bound to the utmost care and diligence, not only in the management of the trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangement necessary to the safety of the passengers. Va. Cent. R. R. Co. v. Sanger. 15 Gratt. 230 ; Carrico v. W. Va. Cent., etc.. Ry. Co., 39 W. Va. 86, 19 S. E. Rep. 570.
Moreover, if a railroad company, whilst using its track for the carriage of passengers, engages in a work to be done on its road and in the immediate proximity of its track, negligence in the performance of which would, in the estimation and opinion of cautions persons, involve the hazard of obstruction to the passage of its cars, and accident to a passenger is caused by an obstruction arising from negligence in the performance of the work, it is no defence to show merely that they had placed the work in the hands of an independent contractor, and that the obstruction was caused by the carelessness of one of his employees.
Thus, contractors employed by a railroad company to deliver stone on the road and prepare it for ballasting the track (the ballasting not being necessary to the security, but being intended for the preservation of the track), place the stone in ridges so near the rail that it is struck by the step of the baggage car, or the ridge is disturbed and a stone rolled down by the hub of one of the cars, or is rolled down by the j arring of the train as it passes near the ridge, or it is loosened from its place and rolled down by the haste of one of the hands employed by the contractors in getting off the ridge to avoid the train, and the cars run against it, and are thrown oif the track, whereby a passenger is in j ured; it is for the jury to enquire whether there was not danger in the work, arising from the mode and manner in which it was done; whether the company did not know, or by the exercise of the proper diligence might not have ascertained, the existence of such danger; and whether they had used due care and foresight in guarding against it; and if they have fathed in this, the company is responsible to the passenger for the injury he has sustained. Va. Cent. R. R. Co. v. Sanger. 15 Gratt. 230. Compare N. & W.R. Co. v. Stevens, 97 Va. 631, 34 S. E. Rep. 525.
Lights at Stopping Place.—And where there is evidence before the jury that there were no lights at a stopping place, it is proper for the court to charge that if the accident was caused by the defendant company’s failure to light the place, it is liable for damages. Alexandria & F. R. R. Co. v. Herndon, 87 Va. 193, 12 S. E. Rep. 289. As to placing “safe guards.” see Richd. City Ry. Co. v. Scott, 86 Va. 902, 11 S. E. Rep. 404.
(c) Setting Down Passenger.—In Alexandria & F. R. Co. v. Herndon, 87 Va. 193, 12 S. E. Rep. 289, an accident occurred at night during a snow storm while it was intensely dark, and the platforms of the cars were covered with snow. The plaintiff, a woman, was unattended, and was incumbered by heavy clothing and parcels. There was no platform at the station, and defendant's servants, though present, rendered plaintiff no assistance. It was not error under these circumstances for the court to charge that, if there was no platform or other proper landing place at the stopping place, aiid defendant’s servants rendered plaintiff no assistance in alighting, and, for want of such landing place and assistance, plaintiff was injured without fault on her part, she could recover.
And when a street-railway company stops its car in front of an excavation made by the city, to allow passengers to alight, and neither warns them of the danger nor assists them to alight, it is liable for injuries sustained by a passenger who steps off the car into the excavation.
Thus, in an action against a street-railway company for personal injuries sustained by plaintiff in stepping off defendant’s car, on which he was a passenger, and falling into a ditch made by the city, and along which the car was stopped for plaintiff to alight, a demurrer to the declaration, on the ground that It does not show the condition of the place was such by.reason of the absence of proper safeguards, is properly overruled, since the cause of action arises out of the duty of every carrier of passengers not to expose its passengers to any danger in alighting, and not from such failure to provide safeguards. Richmond City Ry. Co. v. Scott, 86 Va. 902, 11 S. E. Rep. 404.
e. To Whom Liable, and When.
Trespasser.—In Va. M. Ry. Co. v. Roach, 83 Va. 375, 5 S. E. Rep. 175, a former lireman of the railroad accepted an invitation of one of its engineers to ride on the engine with him. The conductor saw him on the engine, and spoke to him there. He neither paid any fare nor had any dem anded of him. The rules of the company, which every employee was required to learn, prohibited any one but the engineer and certain employees from riding on the engine. Such former fireman was charged with notice of such rules, and could not derive any authority from the engineer or conductor for his act, and was therefore a mere trespasser, and could not recover for injuries sustained.
Carrier as Conservator of the Peace.—Section 31, ch. 145 of the Code, which enacts among other things, *380 that “the conductor of every train of railroad cars shall have all the powers óf a conservator of the. peace while in charge of the train,” does not relieve the carrier of passengers from such liability. Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. Rep. 243.
Liability for False Imprisonment.—A common carrier of passengers is liable for the false imprisonment of a passenger, made or caused to be made by its conductor in charge of the train, during his execution of the carrier’s contract to treat properly and convey safely. Gillingham v. Ohio River R. Co., 35 W. Va. 588, 14 S. E. Rep. 243.
And the mayor of a city is not authorized by law to appoint a special policeman for a railroad company. Thus, a night watchman, in the employ and pay of the company was sworn in by the mayor, at the company’s request. He arrested and imprisoned the plaintiff, though possessed of no authority to make arrests as an officer. In so doing, however, he acted within the scope of his employment, and the arrest of the plaintiff was authorized and ratified by the company. The plaintiff in an action against the company for false imprisonment is entitled to recover. N. & W. R. Co. v. Galliher, 89 Va. 639, 16 S. E. Rep. 935.
Assault by Conductor.—And a railroad company is liable to a passenger on one of its trains for willful assault and battery committed on such passenger by the conductor in charge of such train. Such an assault is a breach of the duty of protection which such company owes to its passengers. Smith v. N. & W. Ry. Co. (W. Va. 1900), 35 S. E. Rep. 834. See in connection with this general subj ect, ante, “Liability”;post, “Ejectment”; also, “Actions.”
E. NEGLIGENCE.
1. In General.
Defined.—Negligence is the doing of something, which, under the circumstances, a reasonable person would not do, or the omission to do something in discharge of a legal duty, which, under the circumstances, a reasonable person would do, and which act of commission or omission, as a natural consequence directly following, produces damages to another. Washington v. B. & O. R. R. Co., 17 W. Va. 190.
Embraces a Question of Law and Fact.—The question whether a party has been negligent in a particular case, is one of mingled law and' fact. It includes two questions, whether a particular act has been performed or omitted; this is a pure question of fact. Whether the performance or omission of this act was a legal duty; this is a pure question of law. The extent of a person’s duties is to be determined by a consideration of the circumstances in which he is placed. The law imposes duties upon men according to the circumstances in which they are called to act. When the facts are disputed, the question of negligence is a mixed question of law and fact. The jury must ascertain the facts, and the judge must instruct them as to the rule of law which they are to apply to the facts as they may find them. When, however, the direct fact in issue is ascertained by undisputed evidence, and such fact is decisive of the case, a question of law is raised, and the court should decide it. The j ury has no duty to perform. The issue of negligence comes within this rule. Questions of care and negligence after the facts are proved must be decided by the court. A judge is not bound to submit to the jury the question of negligence, although there may be a conflict of evidence in relation to some of the facts relied on as proving it, if, rejecting the conflicting evidence, the negligence charged is conclusively proved by the defendant’s own witnesses. Dun v. Seaboard, etc., R. Co., 78 Va. 658.
Onus Probandi.—The onus probandi is upon the plaintiff. At least a reasonable presumption of negligence must be raised by the plaintiff. But when a passenger is injured, or damage befalls a passenger, due to the breaking down or overturning of a train, or the falling through of a bridge, the breaking of some part of the vehicle or apparatus, as a wheel or axle, or by any other accident occurring on the road, there is ajprima facie presumption that it occurred by the negligence of the carrier, and the onus is shifted to the carrier to rebut the presumption thus created. Moreover, it rests upon the defendant to show contributory negligence on the plaintiff’s part, where the defendant desires to defend on the ground that the contributory negligence of the plaintiff was the proximate cause of the injury. C. & O. R. Co. v. Lee, 84 Va. 642, 5 S. E. Rep. 579; Madden v. Ry. Co., 28 W. Va. 610; B. & O. R. R. Co. v. Noell, 32 Gratt. 394; Johnson v. R. R. Co., 25 W. Va. 571; Sheff v. City of Huntington, 16 W. Va. 307; B. & O. R. R. Co. v. McKenzie, 81 Va. 71; Farley v. R. R. Co., 81 Va. 783; Barton’s Law Prac. p. 204. See post, “Actions”; also, ante, “Liability.”
Negligence Per Se.—In cases where the common experience of mankind, and a common consensus of prudent persons have recognized that to do or not to do certain acts is prolific of danger, the doing or omission of them is “negligence perse” or “legal negligence.” The omission of the duty enjoined by law for the protection and safety of the public by a common carrier, or the doing of an act by such a carrier, which, by the experience and consensus of prudent persons, would create danger to passengers, is legal negligence. Carrico v. W. Va. Central, etc., Ry. Co., 35 W. Va. 389, 14 S. E. Rep. 12.
Thus, it is legal negligence for a passenger to ride in a fast going passenger coach, with his arm protruding from the window, and beyond the line of the body of the car. Carrico v. W. Va. Cent. & P. Ry. Co., 35 W. Va. 389, 14 S. E. Rep. 12; Dun v. Seaboard, etc., R. Co., 78 Va. 645.
But the train’s mere speed of motion is not, per se, evidence of negligence, nor is the fact that the train is behind time. N. & W. R. R. v. Ferguson, 79 Va. 241.
Specific Application of Principles.
Washout Due to Waterspout—Vis Major.—In an action against a railroad company for the death of a passenger, it appeared that the accident occurred on a dark and rainy night, the rain falling in torrents, flooding the track, which lay alongside a mountain; that the train was stopped at times at exposed places, but met no obstruction until it reached the place of accident, by which time the rain had ceased. This place was an earth fill, provided with a stone culvert 35 years old, and no accident had ever happened there. In consequence of a waterspout, the culvert did not carry off the water, and a great pond was formed against the earth embankment, causing it to give away, but leaving the rails and ties unbroken; the train went down into this washout, killing plaintiff’s intestate. Held, that defendant was not liable. Norfolk & W. R. Co. v. Marshall, 90 Va. 836, 20 S. E. Rep. 823. See ante, “Act of God.” See also, post, subject “Duties.”
Liability Cannot Be Shifted.—And a carrier of passengers cannot relieve itself from liability in regard to the condition and construction of its road by undertaking to confide its duties, which it owes to *381 passengers, to other hands, no matter what precaution it may take in selecting such agencies; as where it confides to a contractor the repairs on its road and the contractor places constructions too close to the track. Carrico v. W. Va. Central, etc., Co., 35 W. Va. 389. 14 S. E. Rep. 12.
So, if by reason of work done by a company in the neighborhood of their track, a stone rolls onto the track and obstructs it. that work being such that any negligence in its performance would be likely to cause such an obstruction, they are liable to a passenger for an accident caused by the obstruction, although they employed a skillful contractor to perform the work. Va. Cent. R. Co. v. Sanger, 15 Gratt. 230.
Passenger Injured by a Collision—Instruction.—And in Shen. Val. R. Co. v. Moose, 83 Va. 827, 3 S. E. Rep. 796, a passenger, who was suffering with rheumatism was thrown from his seat by a collision of trains and his thigh bone broken. An instruction to the jury that, though they believed the plaintiff was injured as complained of, yet, if they believed that he was in such an infirm state as would have prevented a prudent man from taking the risk of travel, and but for that state he would not have received the injury, he cannot recover, is properly refused, because inconsistent with both the evidence and the law.
Carrier’s Duty to Invite Intoxicated Passenger to Go Inside.—And where a passenger rides on the platform of a car in such a state of intoxication as to be careless and heedless of the danger to which he is exposed, it is the duty of the railroad company, after the conductor has notice of his condition and exposure to danger, louse the ordinary precautions for his safety, such as calling his attention to the danger, and the rules of the company forbidding such exposure, and inviting him to go inside the car. Fisher v. W. Va. & P. R. Co., 39 W. Va. 366, 19 S. E. Rep. 578, 23 L. R. A. 758.
Servant’s Skill and Knowledge.—And servants of an electric street-railway company are bound to know the difficulty of controlling a car when there is snow on the rails; and where, at such a time, they approach a heavy down grade at such unusual speed as to cause their car to slide down the track, though the brakes are properly set, the company is liable for injuries to a passenger. Danville St. Car Co. v. Payne (Va. 1896), 24 S. E. Rep. 904.
Coach Upset—-Morses Not Controlled—Liability.— Moreover, though the proprietors of the coach may show that it was reasonably strong, with suitable harness, trappings and equipments of sufficient strength, and properly made, and that the driver was careful, of reasonable skill and good habits, with steady horses not likely to endanger the safety of passengers; yet, if the upsetting of the coach is caused by the running off of the horses, and such running off of the horses might have been arrested if the utmost care and diligence of very cautious persons had been exercised, the proprietors of the coach are liable for the injuries sustained by a passenger. Farish v. Reigle. 11 Gratt. 697.
2. Contributory Negligence.

a. In General

What It Consists in and Effect,—It is a general if not universal rule, that, if the plaintiff has been guilty of contributory negligence, he cannot recover. By contributory negligence is meant such negligence on the part of the plaintiff as contributes to the injury, that is, directly in part causes it. Washington v. B. & O. Ry. Co., 17 W. Va. 190; Dun v. Railroad Co., 78 Va. 658; B. & O. R. R. Co. v. McKenzie, 81 Va. 71. See Nash v. Railroad Co., 82 Va. 55.
Or, as stated in Richd. & Danvl. R. Co. v. Pickleseimer, 85 Va. 798. 10 S. E. Rep. 44, it consists in such acts or omissions of plaintiff, as amount to want of ordinary care, as, co-operating with negligent acts of defendant, are the proximate cause of the injury.
But it is not contributory negligence for a plaintiff to be guilty of a negligent act, which might have produced the injury, if, before it actually results, the defendant is guilty of some negligent act, which was the immediate canse of the injury, even though no damage could have resulted to the plaintiff, had he not been originally negligent. Washington v. B. & O. R. Co., 17 W. Va. 190.
Therefore if the direct cause is defendant’s omission, after knowing plaintiff’s negligence, to use proper care to prevent its consequences, a recovery may be had. Farley v. Railroad Co., 81 Va. 783; Railroad Co. v. Barksdale, 82 Va. 330; Va. Mid. R. Co. v. White, 84 Va. 498, 5 S. E. Rep. 573; Railroad Co. v. Burge, 84 Va. 63, 4 S. E. Rep. 21; Coyle v. B. & O. R. Co., 11 W. Va. 94; Rudd v. R. & D. Ry. Co., 80 Va. 546; Downey v. C. & O. Ry. Co., 28 W. Va. 732; Johnson v. R. R. Co., 25 W. Va. 571.
Theory of Contributory Negligence as a Defence.— The principle of right that limits responsibility for negligence to the reasonable results that follow therefrom underlies the rule that there is no liability when contributory negligence is shown. For if it appears that an injury has been occasioned by the negligence of the person who is charging a breach of the duty to exercise care upon another, then this person is himself answerable for the damage and he cannot recover compensation from any one else. The damage is the reasonable result of the contributory negligence and not of the original wrongdoing. And it is important to observe that in all cases it is necessary that this must be true, and that the contributory negligence must be the proximate cause of the injury, or it will be no defence. The damage must be justly attributable to it to allow the original wrongdoer to escape from the final effect of his act. As is said by an eminent authority, the person who is injured by the negligence of another “is not to lose his remedy merely because he has been negligent at some stage of the business, though without that negligence the subsequent events might not or could not have happened; but only if he has been negligent in the final stage and at the. decisive point of the event, so that the mischief, as and when it happens, is proximately due, to his own want of care and not to the defendants. M Pollock on Torts, p. 375; Shearman and Red-field on Neg., § 94; Wharton on Neg.. § 300; Jones on Neg. of Mun. Corp. § 206.
See, on general subj ect of contributory negligence, N. & P. R. R. Co. v. Ormsby, 27 Gratt. 455; N. & W. R. R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454; Trumbo v. Street-Car Co., 89 Va. 780, 17 S. E. Rep. 124; R. & D. R. R. Co. v. Pickleseimer, 85 Va. 798, 10 S. E. Rep. 44; Richd. & Danvl. R. R. Co. v. Scott, 88 Va. 958, 14 S. E. Rep. 763; N. & W. R. R. Co. v. Ferguson, 79 Va. 241; Reed v. Axtell, 84 Va. 231, 4 S. E. Rep. 587; N. Y., etc., R. Co. v. Cooper, 85 Va. 939, 9 S. E. Rep. 321; Jammison v. C. & O. R. Co., 92 Va. 327, 23 S. E. Rep. 758.

b. Cases Illustrative of Principles.

(a) Entering Conveyance.—in an action for personal injuries, it appeared that plaintiff was traveling as a stock shipper on defendant’s freight train; that at the end of a run, on a rainy night, the train *382 stopped just before crossing a bridge, where it is customary to detach the caboose in which plaintiff had been riding; that he could walk across or ride on the rear freight car; that the stop was long enough to enable him to make a change; but he remained in the caboose till it was uncoupled, and the train had started, when he went forward, with a large valise in his hand, and in attempting to climb on car while in motion fell through the bridge. Held, his own negligence was the cause of his misfortune. R. & D. R. Co. v. Picklesimer, 89 Va. 389, 16 S. E. Rep. 245; R. & D. R. Co. v. Pickleseimer, 85 Va. 798, 10 S. E. Rep. 44.
(6) In Transitu.
Riding on Platform.—It is the duty of a passenger unnecessarily riding on the platform of a car in motion to go into the car when requested by the conductor or other person having charge of the train, when there is standing room inside, and by reason of such refusal, and by going down on the steps of the car without the knowledge of the conductor or other person having charge of the train, he loses his balance and falls overboard, and is injured, he is guilty of contributory negligence such as will preclude his recovery for such inj ury. Fisher v. W. Va. & P. Ry. Co., 42 W. Va. 183, 24 S. E. Rep. 570.
Passing from One Car to Another.—But it is not negligence ps»'se for a passenger on a rapidly moving train to attempt to pass out of one car into another, in search of a seat. C. & O. R. Co. v. Clowes, 93 Va. 189, 24 S. E. Rep. 833.
Riding on Pilot of Engine. — However, where a railroad company is in the habit of carrying its shopmen to and from their work as a matter of accommodation and without any agreement or compensation therefor, if its train is so crowded, that one of said shopmen-cannot get a seat in the cars, that fact will not justify him in sitting on the pilot of the engine; and if he does improperly do so, it is his duty to leave the pilot and go into the cars at his first opportunity. Downey v. C. & O. Ry. Co., 28 W. Va. 732.
Riding in Conductor’s Chair in Caboose of Freight Train.—In Norfolk & W. R. R. Co. v. Ferguson, 79 Va. 241, a passenger in a freight car who had been drinking, and who, instead of taking a perfectly safe .seat designed for passengers, along the sides of the car, sat in the conductor’s loose chair tipped up against a box within three inches of the open side door, was thrown out by the jar of the cars running together, because of the train running at 35 miles an hour around sharp curves. It was held that he was guilty of contributory negligence.
Resting Arm on Window Sill—Not Protruding.—Yet to rest the arm upon the window sill of a car, provided it does not protrude, is not negligence per se. Carrico v. W. Va. Cent., etc., Co., 35 W. Va. 389, 14 S. E. Rep. 12.
Same—Arm Protruding beyond Line of Body of the Car.—Nevertheless, the slightest voluntary projection of the limbs of the passenger from the window of a moving car constitutes contributory negligence, preventing a recovery on his part in case of injury, without regard to the question of negligence in the carrier in failing to take precautions against such accidents. Richd. & D. R. Co. v. Scott, 88 Va. 958, 14 S. E. Rep. 763, 16 L. R. A. 91; Carrico v. W. Va. Cent., etc., Co., 35 W. Va. 389, 14 S. E. Rep. 12.
Thus, in Dun v. Ry. Co., 78 Va. 645, 49 Am. Rep. 388, it is held that, riding with the arm outside the window of a railway car is fatal contributory negligence, unless it appears that the defendant knew the danger and omitted to warn the passenger.
Jumping from Moving Car to Escape Impending Danger.—Yet, where a passenger, acting with reasonable care, jumps from a moving car in order to escape an. impending danger, and is injured thereby, he is not guilty of such contributory negligence as will bar a recovery, even though such injury would not have occurred if hehad remained upon the car. Dimmey v. W. & E. G. R. R. Co., 27 W. Va. 32.
Going upon Platform When Train Stops.—And where a passenger, who has been informed that the train, will stop at the station for 10 or 15 minutes, goes upon the platform of the coach to greet a friend while the trainstops.it is not negligence. So. Ry. Co. v. Smith, 95 Va. 187, 28 S. E. Rep. 173.
(c) Leaving Conveyance,
Stepping Off Station Platform in Dark.—But in Reed v. Axtell & Myers, 84 Va. 231, 4 S. E. Rep. 587, a passenger, while staying over at a station on the company’s road at night, went upon the platform, and walked to the end where she fell off and was injured. The night was dark, and the platform lamp had been temporarily moved to be trimmed. The court held that the plaintiff was guilty of recklessness, and could not recover.
Passenger by Mistake Jumps Off End of Caboose.— Similarly, a passenger in a caboose of a freight train, was awakened by the conductor, and informed that he had reached his destination ; and after the train had passed it a little, and stopped at the frog, the passenger was again awakened by' the conductor, and could then have gotten off safely. The conductor soon returned, and woke him a third time, telling him to get off and then went out at the end of the caboose, and, the night being very dark stood on the station platform with the lantern in his hands within three feet of the car platform. There was no chain across the end of the platform in rear of the caboose, and it was not necessary to have any. The train commenced backing. The passenger walked to the end of the car, jumped off, and was severely injured by the cars passing over him. The court held that, although the company was culpably negligent for having insufficient station lights, and for not warning the passenger to Wait until the train was still, yet the passenger’s contributory negligence precluded him from recovering for the injury. Richmond & D. R. Co. v. Morris, 31 Gratt. 200.
Thrown from Platform by the Jerking of the Cars.— And in N. & W. R. R. Co. v. Prinnell (Va. 1887), 3 S. E. Rep. 95, when a station had been announced, the train stopped at the accustomed place, and a passenger, who was descending the steps in the act of alighting, was thrown down, either by a sudden jerking of the car or its unexpected motion. The court held, that the plaintiff was not guilty of negligence, as he was on the platform in response to the defendant’s invitation to alight; and the defendant, having violated its duty by moving the train when the plaintiff had the legal right to assume that it would remain stationary, was guilty of negligence for which an action wonld lie.
3. Imputed Negligence.—And where by a railroad company’s negligence a child of tender age and non sui juris is injured, the contributory negligence of its parents is not to be imputed to the child; and whether the action for damages is brought by the child itself or by its personal representative, the company is liable. N. & W. R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454.
*383 4. Concurrent Negligence.—Moreover, where by the concurrent negligence of a carrier and third person, a passengeT is injured, the negligence of the former cannot be attributed to the passenger so as to prevent him from recovering damages of the third person. N. Y., P. & N. R. R. Co. v. Cooper, 85 Va. 939, 9 S. E. Rep. 321. And where the negligence or carelessness of a passenger concurs with that of the carrier, causing injury to the passenger, the carrier is not liable by default. Downey v. C. & O. R. Co., 28 W. Va. 732.
5. Proximate Cause.—The cause of an injury in the contemplation of law is that which immediately produces it as its natural consequence; and therefore if a party be guilty of an act of negligence, which would naturally produce an inj ury to another, but, before such injury actually results, a third person does some act, which is the immediate cause of the injury, such third person is aloné responsible therefor, and the original party is in no degree responsible therefor, though the injury could never have occurred but for his negligence. The causal connection between the first act of negligence and the injury is broken by the intervention of the act of a responsible party, which act is in law regarded as the sole cause of the injury according to the maxim “Injure non remota causa sed próxima spectatur.” Washington v. B. & O. Ry. Co., 17 W. Va. 190.
And'it is important to observe that in all cases it is necessary that the contributory negligence of the plaintiff must be the proximate cause of the injury, or it will be no defence. Pollock on Torts, p. 375; Wharton on Neg. § 300.
Negligence, however, is the proximate cause of an injury when the injury is the natural and probable consequence of the negligence complained of, and the result is such as ought to have been foreseen under the circumstances in the particular case. Connell v. Chesapeake, etc., Ry. Co., 93 Va. 44, 24 S. E. Rep. 467.
Illustrating the application of these principles, it is held that, , a person cannot voluntarily incapacitate himself from liability to exercise ordinary care for his own self-protection and then set up such liability as an excuse for his failure to use care, and if the intoxication contributed to the injury, as a proximate cause thereof, it is a complete bar to any action for any damages sustained in consequence of it. Fisher v. W. Va. & P. R. Co., 39 W. Va. 366, 19 S. E. Rep. 578, 23 L. R. A. 758.
But in order to debar a plaintiff from recovery of damages for an injury from negligénce it must be shown that his negligence must be the proximate cause of the injury. When both parties are chargeable with negligence, the plaintiff cannot recover if his negligence contributed in any degree to his injury; but, if it did not contribute to it in any degree, he may recover, his negligence not then being contributory, because not the proximate cause of the injury, but only remote from it, or collateral to it; and the defendant’s negligence is in such case the proximate cause of the injury. Carrico v. W. Va. Cent. & P. Ry. Co., 39 W. Va. 86, 19 S. E. Rep. 571.
And though the negligence of the plaintiff be in its character contributory, yet, if his injury would have occurred from the defendant’s negligence just the same if the plaintiff had been in no wise negligent, the plaintiff is not prevented by his negligence from recovery. Carrico v. W. Va. Cent. & P. Ry. Co., 39 W. Va. 86, 19 S. E. Rep. 571.
Moreover, even if a plaintiff be chargeable with negligence contributing to the injury, yet, if the defendant knows of the danger to the plaintiff arising from his negligence, and can by ordinary care avoid the injury, but does not, he is liable for his negligence, notwithstanding the plaintiff’s negligence. Carrico v. W. Va. Cent. & P. Ry. Co., 39 W. Va. 86, 19 S. E. Rep. 571 ; Downey v. C. & O. Ry. Co., 28 W. Va. 732.
F. EJECTION.
Conductor’s Right to Demand Ticket or Fare—Conse» quence of Refusal.—A railroad conductor may demand a ticket as evidence of a passenger’s right of passage, and on failure to produce it may demand payment of fare ; and on failure to pay it may lawfully eject the passenger from the train using no more force th an necessary. MacKay v. O. R. R. Co., 34 W. Va. 65, 11 S. E. Rep. 737. See in connection with “Ejection” ante, “Fares and Tickets”; also, post “Actions.”
Ejection for Not “Otherwise Identifying” Than by Signing Ticket—But where a ticket provides that when it is presented to the conductor the passenger shall sign his name thereto, and “otherwise identify” himself as original purchaser thereof and the passenger offers to sign the ticket, which offer the conductor refuses, and ejects him from the train on account of his refusing to pay fare, the company is liable in damages for the expulsion, as the conductor is not entitled to require a passenger to “otherwise identify” himself. N. & W. Ry. Co. v. Anderson, 90 Va. 1, 17 S. E. Rep. 757.
Right of Carrier to Eject When Ticket Has Expired.— Yet a railroad company is justified in ejecting a passenger trying to ride on a limited ticket which has expired, and who refuses to pay his fare. Grogan v. C. & O. Ry. Co., 39 W. Va. 415, 19 S. E. Rep. 563.
Passenger Ejected after Having Been Warned of Tick= et’s Invalidity.—And where the holder of a mileage ticket has been warned by the conductor that a ticket is not good, and has been ordered taken up, and the party pays his fare, and neglects to make inquiries at the proper place regarding his ticket, although he has several opportunities of so doing, and again boards the train with the intent of becoming a passenger, and offers the mileage ticket in payment of his fare, the conductor, upon refusal of the party to pay his fare, may take up the ticket and eject him from the car, using no more force than is necessary for that purpose. Moore v. O. R. R. Co., 41 W. Va. 160, 23 S. E. Rep. 539.
Ticket to Station Where There Is No Stop.—Nevertheless, where a plaintiff, holding a ticket for a station, at which the train does not stop, is refused the privthege of riding to an intermediate station, and is put off in the rain, against his consent, and from the exposure two months’ sickness resulting, in consequence of which he loses his position, he is entitled to both compensatory and punitive damages. Richmond, F. & P. R. Co. v. Ashby, 79 Va. 130.
Change of Rules—Conductor Not Informed—Ejection. —And where a railroad company fails to inform its conductor of a change in rules as to the sale of tickets and stoppage of train, and such conductor, through want of such information, wrongfully ejects him from the train, the company is liable therefor. Sheets v. Ohio, etc., Co., 39 W. Va. 475, 20 S. E. Rep. 566.
Conductor Mistakes Distance Covered by Ticket-Ejection.—In N. & W. R. R. Co. v. Neely, 91 Va. 539, 22 S. E. Rep. 367, a conductor put a passenger off the train without violence or abuse in the belief that the passenger’s ticket entitled him to ride no fur- *384 tier, and, on discovering his mistake tried to get a conveyance to send for the passenger. It was held that, a verdict against the company for $1,000 damages for the ejection was excessive.
Agent by Histake Gives Ticket for Opposite Direction —Conductor Ref uses Recognition.—And if a passenger pay a railroad agent fare for a certain trip, and by mistake of the agent is given a ticket not answering for that purpose but only in the opposite direction, and the conductor refuses to recognize such ticket, and demands fare, which the passenger fails to pay, ejection of the passenger from the train without unnecessary force will not be a ground of action against the company as for a tort, but the action may and must, be based on the breach of a contract to convey the passenger. Mackay v. Ohio River R. Co., 34 W. Va. 65, 11 S. E. Rep. 737.
G. BAGGAGE.
Of What It Consists,—“It is impossible to define with accuracy what will be considered baggage within the rule of the carrier’s liability. It may be said, generally, that by baggage we are to understand such articles of personal convenience or necessity as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the trunks of passengers, which are not, however, designed for any such use, but for other purposes, such as a sale and the like.” Story on Rail. § 499.
But “what should constitute necessary baggage for a traveler depends very much upon the circumstances of each particular case. The conveniences required for the journey which has been undertaken, the duration of the absence, as well as the position of the parties, have considerable to do with it, and all these are to be considered as a question of fact for the decision of the court or jury.” Hutchinson on Carriers, § 680.
Extent of Carrier’s Liability.—A railroad company is liable as a common carrier, for the baggage of a passenger, to the same extent, if the passenger is traveling with his baggage, as if it was carried without him. Wilson v. C. & O. R. R. Co., 21 Gratt. 654. See ante, “Liability.”
Restricting Liability.—To restrict the liability of a railroad company as a common carrier, for the loss of the baggage of a passenger, there must be proof of actual notice to the passenger of such restriction, before the cars are started ; and an endorsement on the ticket given to the passenger, is not enough, unless it is shown that he knew its purport before the cars started. Wilson v. C. & O. R. R. Co., 21 Gratt. 654. See ante, “Contracts of Exemption and Limitation.”
Liability beyond Terminus. — And although a through ticket given to a passenger specifies on its face, that each party to the contract is only liable for losses on his part of the line, the railroad is liable for loss on a stage line, the proprietors of which have contracted with the railroad company to carry passengers and their effects to their destination. Thus, under a contract between stage proprietors and a railroad company, by which the former were to carry passengers from the terminus of the railroad to their destination, it was held that the proprietors of the stage were agents of the railroad company, and the company was liable for the loss of the baggage of a passenger. Wilson v. C. & O. R. R. Co., 21 Gratt. 654.
Rules and Regulations—Peddler’s Baggage.—A railroad company may make all reasonable rules for conducting its affairs. And it is a reasonable rule that it will only carry as baggage the passenger’s wearing apparel, and upon refusal of the passenger to certify that “his trunk contains nothing except wearing apparel,” the passenger is not entitled to damage for the company’s refusal to carry such trunk. N. & W. R. R. Co. v. Irvine, 84 Va. 553, 5 S. E. Rep. 532. Thus, a passenger in the habit of carrying merchandise in his trunk, against carrier’s rules, may be required to prove contents as a condition of receiving and checking it. N. & W. R. R. Co. v. Irvine, 85 Va. 217, 7 S. E. Rep. 233.
Delivery.—And where a through passenger who takes advantage of the privthege to stay all night at the terminus of the road and go on the stage next morning, takes her baggage with her to her hotel where she stays, but brings it out to the stage with her the next morning, and commits it to the agent of the line, and it is lost, the railroad company is liable for the loss. Wilson v. C. & O. R. R. Co., 21 Gratt. 654.
Recovery of Penalty Provided by Statute for Company’s Failure to Transfer. —Under Va. Code, ch. 145, § 5, it is provided that if a statute giving a penalty does not expressly mention that such penalty shall be in lieu of damages, the party injured might recover the actual amount of damages suffered by reason of the breach of such statute. In construing this statute the court held that a plaintiff, who has been injured by the failure of a railroad company to transfer his baggage, is not limited to a recovery of the penalty prescribed for such failure by Va. Code, ch. 61, § 17, but may recover the amount of actual damages. N. & W. R. Co. v. Irvine, 84 Va. 553, 5 S. E. Rep. 532.
VI. ACTIONS.
A. AGAINST CARRIERS OF GOODS.
1. In Gbnebal.
Waiver of Right of Action.—Acceptance of goods which a carrier has contracted to deliver at a certain time and which it has fathed to deliver until a later date is no waiver of the consignee’s right of action for the delay. N. & W. Ry. Co. v. Ship. Comp. Co., 83 Va. 272, 2 S. E. Rep. 139.
And where a bill of lading does not state the location of a claim agent’s office, a stipulation that notice of a claim must be given within five days is unreasonable and void. N. & W. Ry. Co. v. Reeves, 97 Va. 284, 33 S. E. Rep. 606.
Demand of Repayment of Excess before Suit.—And a repayment of freight charges in excess of those lawfully chargeable by a railway company need not be demanded before bringing suit to recover back the excess. W. Va. Transp. Co. v. Sweetzer, 25 W. Va. 434.
Assignability of Right of Action.—A right of action against a common carrier for injury to goods while in cars of transportation is assignable. N. & W. R. R. Co. v. Read, 87 Va. 185, 12 S. E. Rep. 395.
2. PLEADING AND PRACTICE.
a. Form of Action—When there is a public employment, from which arises a common-law duty, an action may be brought in tort, although the breach of duty assigned is the doing or not doing something contrary to an agreement made in the course of such employment, by the party on whom such general duty is imposed. Southern Express Co. v. McVeigh, 20 Gratt. 264.
And in Ferrill v. Brewis, 25 Gratt. 767, the court said : “In determining the character of the first count in the declaration here, it is proper to bear in mind there is a class of cases (among them that of bailment) in which the foundation of the action *385 springs out of the privity of contract between the parties, but in which, nevertheless, the remedy for the breach or nonperformance is indifferently in assumpsit, or in case upon tort. Boorman v. Brown, 3 Adol. & Ellis 525 ; Southern Express Co. v. McVeigh, 20 Gratt. 264.
“In all these cases the contract is of course referred to to ascertain the rights of the parties and the measure of redress ; but the wrongful act of the defendant is relied upon as the gravamen of the action. This is peculiarly true with regard to attorneys, surgeons, carriers and the like. The principle is, however, not confined to employments of a public character, but to all bathees, whether public or private. In cases of mere gratuitous bailment, as no consideration is paid, it has been generally considered that an action ex delicto is peculiarly appropriate.”
Action— Nature.—And in Spence v. N. & W. R. Co., 92 Va. 102, 22 S. E. Rep. 815, it is held that, where the direction to a carrier is not to deliver the goods until payment shall be made by the consignee the property in the goods continues in the consignor, who can sue for damage caused to the same by delay, either by an action on the case, or in assumpsit. And if a shipper by compulsion, pays a common carrier more than its legal rate of charge for freight, such excess may be recovered in an action for money had and received. W. Va. Trans. Co. v. Sweetzer, 25 W. Va. 434. See B. & O. R. Co. v. Rathbone, 1 W. Va. 87.
But there is a conflict of authority as to the nature of an action to recover a penalty for illegal charges. By some courts it is considered that a penalty creates no contractual liability, and that the action is necessarily one of tort. Hart v. B. & O. Ry. Co., 6 W. Va. 336.
Some courts consider the action one of contract, and approve of either assumpsit or debt to recover the penalty. Norfolk, etc., R. Co. v. Pendleton, 88 Va. 350, 13 S. E. Rep. 709; Norfolk, etc., R. Co. v. Pendleton, 86 Va. 1004, 11 S. E. Rep. 1062.

b. Proper Parties to Proceedinys.

Suit against Receiver.—And a receiver appointed to assume charge of the affairs of a railroad company may be held responsible for the damage actually .sustained by a shipper of freight, through the negligence of the receiver’s agents and employees, in any case in which the company could be so held. But where the receiver is appointed by a court of equity he cannot be sued at law without permission of the appointing court. Melendy v. Barbour, 78 Va. 544.
Carrier Unincorporated—How Sued.—And where .common carriers are not incorporated, any one or more of them may be sued by his or their name or names only, to recover damages for loss or injury to any person, parcel, or package, and such suit «hall not abate for want of joining any of his co-proprietors or copartners. Va. Code 1887, sec. 1297; W. Va. Code 1900, ch. 103, § 9.
Connecting Carriers.—Act March 3, 1892, § 14 (Acts 1891-92, p. 965), authorizes the railroad commissioner to commence proceedings against any carrier which fails to make connection with other railroads, after the commissioner has requested such roads to make such connections. Two connecting railroads fathed to make connection, and, on the receipt of request from the railroad commissioner suggesting the changes in time which the company should make, the So. Ry. Co. complied therewith, but the B. Co. .refused to adopt such time card. Held, that the So. Ry. Co. was a proper party to proceedings to require the roads to make proper connections, though it had complied with the request of the commissioner, since all the parties should be before the court, so that all the matters in dispute could be determined, and a judgment binding on both corporations, be rendered. Southern Ry. Co. v. Com. (1900), 98 Va. 758, 37 S. E. Rep. 294.
c. P?'ocess.—In a case against any common carrier (other than a corporation) for a liability as such, any process against or notice to the carrier, may be served on such carrier, or on any agent, or on the driver, captain, or conductor of any vehicle of such carrier in the county or corporation wherein the case is commenced; and if the carrier be not in said county or corporation and there be no such agent, driver, captain, or conductor therein, the process or notice shall be sufficiently served by the publication thereof once a week for four successive weeks, in a newspaper printed in this state. Va. Code 1887, sec. 3228. For service of process on corporations, see Va. Code 1887, §§ 3220-27 ; 13 Va. L. Journal 741.

d. The Declaration.

Averments—Sufficiency.—if a declaration does not allege that the defendant is a common carrier, yet, if the facts set out constitute it such in law, it is sufficient to sustain the action against it as a common carrier. So. Exp. Co. v. McVeigh, 20 Gratt. 264.
And in an action for damages for failure to carry goods at a rate agreed, an averment in the declaration that the plaintiff delivered the goods for shipment as he had agreed to do is a sufficient averment that the goods were furnished within a reasonable time after making the contract. Southern Railway Co. v. Wilcox, 7 Va. Law Reg. 381. See also, Williams v. B. & O. R. Co., 9 W. Va. 36.
Moreover, in an action against a carrier for charging an illegal freight rate, if the declaration states the weight of the freight, the time and place where delivered to defendant for transportation, and places to which it was to be transported, distance, the amount which was demanded and received by defendant and that it was more than was lawful, contrary to the statute in such case made and provided, it is a sufficient notice of the canse of action to the defendant to enable it to make all just and proper defences. Hart v. B. & O. Ry. Co., 6 W. Va. 336.
So a declaration is sufficient in law which alleges that certain goods were delivered to and accepted by the defendant to be carried to a certain destination, for reasonable reward, to be delivered to the plaintiff; but by reason of the negligent manner in which the defendant conducted itself in regard thereto, “the goods were wholly lost to the plaintiff.” Williams v. B. & O. R. Co., 9 W. Va. 33.
Similarly, an allegation that “the defendant, before and at the time of the committing of the grievances hereinafter mentioned, were the owners and proprietors of a certain railroad, to wit, the Baltimore and Ohio Railroad, and of certain carriages used by it for the carriage and conveyance of goods and chattels in, upon, and along said railway from a certain place, to wit, Parkersburg, Wood county, West Virginia, for hire and reward to it the defendant in that behalf,” isa sufficient allegation that the defendant was a common carrier. B. & O. R. R. Co. v. Morehead, 5 W. Va. 293.
e. Variance— Condition in a contract limiting a carrier’s liability should be stated. If the declaration alleges an unqualified contract to carry, and *386 the contract proved is to carry, the defendant not being answerable for certain risks, there is a variance, and if there are provisions in the contract other than are usually embodied therein it is not necessary to aver the reasons that influenced or the purposes that controlled the shipper or carrier in inserting them. Such allegations add nothing to the legal effect of the contract. B. & O. R. Co. v. Rathbone, 1 W. Va. 87.
And under counts in a declaration in which there are no counts against the defendant except against him as a carrier, or bathee, of cattle, the plaintiff cannot recover for loss resulting from the misrepresentation of the agent, whereby he was induced to ship the cattle on a slow train of the defendant instead of on a fast train. Maslin v. B. & O. R. Co., 14 W. Va. 180.
f. Set-Off—A consignee cannot set off against a carrier’s charges the amount of damages sustained by the goods from an act of God. Galt v. Archer, 7 Gratt. 307.
But if a shipper by compulsion, pays a common carrier more than its legal rate of charge for freight, such excess may be recovered in an.action for money had and received; or it may be used as an offset in an action of assumpsit brought by the carrier. W. Va. Transp. Co. v. Sweetzer, 25 W. Va. 434.
a. Bill of Exceptions.—In an action of trespass on the case against a common carrier, if it appear, by a bill of exceptions, to have been proved at the trial, that the defendant fraudulently opened certain packages and casks, being in his care, and belonging to the plaintiff, andtook therefrom a part of their contents, and converted the same to his own use, but not that the said contents was feloniously carried away., such offence is to be considered as amounting to a trespass only. Cook v. Darby, 4 Munf. 444.
h. Instructions—In an action to recover for breach of a contract in failing to transport a quantity of cord wood, by reason of which the wood was washed away by a freshet and was lost, the court properly refused to instruct the jury that “the measure of damages in case of a failure to deliver goods according to contract, and wljich are lost, is their market value,” etc., defendants not being sued as common carriers, and there being no evidence of a delivery of the wood to them. And a further instruction that plaintiff is entitled to recover as damages whatever he may have expended in the recovery of the wood washed away, if the jury believe that it would not have been washed away if defendants had kept their contract, is also properly refused, in the absence of any evidence to show that such damage can be fairly and reasonably considered as naturally arising from the breach of the contract in question. Slaughter v. Denmead, 88 Va. 1019, 14 S. E. Rep. 833. See monographic note on “Instructions” appended to Womack v. Circle, 29 Gratt. 192.
i. Judgment.—In an action for damages the judgment should be for the amount assessed by the jury and interest thereon from the date of the judgment, and not from the date of the verdict. Fowler v. B. & O. R. R. Co., 18 W. Va. 579.
And a judgment in proceedings under Act March 3,1892, authorizing the circuit court to order connecting railroad lines to make connections, which fixes a schedule for certain connecting trains, to be in effect if the companies fail to agree on a schedule making a desired connection, is erroneous, unless it provides that the connecting roads may afterwards agree on a new schedule, not in conflict with the law. So. Ry. Co. v. Com., 98 Va. 758, 37 S. E. Rep. 294 (1900).
3. Evidence.
Onus.—Where a loss occurs, and the carrier attempts to excuse himself from liability by proof that the loss was caused by one of the exceptions to the general rule, the onus probandi lies on the carrier to exempt himself from the liability. And it is not enough for him to prove, where the goods are carried by water, that the navigation is attended with só much danger that the loss may happen notwithstanding the utmost endeavors of the watermen and crew, to prevent it; that the person conducting the boat possesses competent skill, has used due diligence, and provided hands of sufficient strength and experience to assist him. Murphy v. Staton, 3 Munf. 289 ; B. & O. Ry. Co. v. Morehead, 5 W. Va. 293 ; McGraw v. B. & O. R. Co., 18 W. Va. 361.
And a common carrier does not by limiting his common-law liabilities by special contract thereby become a private carrier; and if loss is sustained, the burden of proof is on him to show not only that such loss arose from a cause from which he was exempted from the responsibilities from the terms of his special contract but also that it arose from no negligence or misfeasance of himself or his servants. Brown v. Adams Express Co., 15 W. Va. 812; Maslin v. B. & O. Ry. Co., 14 W. Va. 180.
But, it should be observed, that in an action by a shipper to recover on excess of payment beyond the legal rates, the plaintiff does not have to prove that he demanded repayment of the excess before instituting his suit. West Va. Transp. Co. v. Sweetzer, 25 W. Va. 434.
Admissibility.—In an action against a carrier for an alleged breach of contract to carry goods at an agreed rate, the contracts of sale of goods made by the shipper to third persons, based on the rate agreed, but to which the carrier was not a party, and of which it had no knowledge until after breach, are not admissible in evidence. Such contracts do not tend to prove the making of the contract in suit. So. Ry. Co. v. Wilcox, 7 Va. Law Reg. 381.
And in assumpsit against a railroad company to recover goods alleged to have been lost by defendant, who had engaged himself as common carrier to transport them for hire, where the declaration contains only the common counts, without regard to the bill of lading, which contains valid exceptions . against loss or damage by fire, etc., the bill is not admissible in evidence, not being applicable to any of the counts. B. & O. R. Co. v. Rathbone, 1 W. Va. 87.
Sufficiency.—In an action by a shipper against a railroad company for the loss of freight, it appeared that the goods were delivered to defendant at Parkersburg, W. Va., April 18, 1861, sent to a person at Culpeper Courthouse, Va., that the goods were carried as far as Baltimore, and there sold at auction by the carrier in 1864, for a grossly inadequate price. The carrier proposed to justify by showing that the war between the rebels and federal government had begun war before the date of' the alleged shipment; that troops were marching through Baltimore to Washington previous to that time ; and that Et. Sumpter was fired upon April 12th or 13th, 1861; and that the president of the-United States had issued his call for 75,000 men on April 15,1861. It was held that the evidence only showed that war existed, but did not show that the defendant was thereby prevented from delivering-the freight. B. & O. R. Co. v. Morehead, 5 W. Va. 293.
*387 Moreover, evidence that plaintiff delivered a basketto a servant of adefendantrailroad. company to be skipped over its road, that this servant was the same person who had repeatedly shipped baskets for her, and that on this occasion he said he shipped it, and that neither she nor any one for her ever received the basket, justifies a judgment in favor of the plaintiff for the value of the basket. Quarrier v. B. & O. R. Co., 20 W. Va. 424.
B. AGAINST CARRIERS OF LIVE STOCK.
1. Pleading and Practice.
Form of Action.—See principles, which apply, with like force, discussed ante, “In General”; also, “Actions against Carriers of Goods.”
Who May Be Sued.--See ante, “Actions against Carriers of Goods.”
Declaration.—"Where a declaration alleges a special contract to carry certain live stock safely, and the evidence adduced by the plaintiff shows that the contract contains a stipulation that the defendant shall not be held liable for any injury thereto, except such as might result from the gross negligence of the defendant’s employees, it will be error to refuse to instruct the jury that the variance will warrant them in finding for the defendant. B. & O. R. Co. v. Skeels, 3 W. Va. 556. See ante, “Actions against Carriers of Goods.”
Variance.—Where a declaration in assumpsit charges common carriers or bathees for hire, for loss or damage generally, and an agreement is proven, showing that the transportation was at the plaintiff's risk, which imposes a different liability than that charged, and a verdict is rendered against the carrier, it should be set aside and a new trial granted for reason of the variances. B. & O. R. Co. v. Rathbone, 1 W. Va. 87. See B. & O. Ry. Co. v. Skeels, 3 W. Va. 556.
Instructions.—if a shipper contract to load and care for live stock at his risk, and the evidence tends to show that the cars were overloaded, and the stock neglected by the shipper, in an action by the shipper for injury to the stock he is not entitled to an instruction that injury to the stock in the custody of a common carrier for shipment raises a presumption of negligence against the carrier, and that the burden is on the carrier to show that the in j ury arose from a cause for which it is not responsible. Such instruction should be qualified by adding “except such injury as results, or may have resulted, from the negligence of the shipper, or the inherent vice or propensity of the animal.” Norfolk & Western Railway Co. v. Reeves, 97 Va. 284, 33 S. E. Rep. 606. See monographic note on “Instructions” appended to Womack v. Circle, 29 Gratt. 192.
Verdict.—If in an action for injury to horses through failure of the defendant railroad company to provide suitable means for unloading the same, it appears that the defendant did not furnish the usual gangway Cor unloading stock leading from the car to the ground, but the horses were unloaded directly upon the depot platform, one side of which was unguarded, and that one horse was injured by either being crowded from or jumping from the unguarded side of the platform, a verdict that defendant fathed to furnish suitable means Cor unloading the stock should not be disturbed. C. & O. Ry. Co. v. American Exch. Bk., 92 Va. 495, 23 S. E. Rep. 935.
And where evidence shows that 147 lambs died because of defendant’s negligence; that they averaged 77pounds each and were worth from seven and one-half to eight cents per pound at the point of destination, a verdict for $742, with interest from date of injury, is justified. N. & W. R. Co. v. Harman. 91 Va. 601. 22 S. E. Rep. 490.
Damages —Where a railroad company agrees to-deliver cattle from a point on its own line to a point on the line of another railway company, and the company makes a mistake in reloading, whereby some of the cattle are sent to another point, and other cattle are mixed with these, by which the loss-occurs to the owner, the company is liable for the consequent loss occasioned by such default on its; part. N. & W. R. Co. v. Sutherland, 89 Va. 703, 17 S. E. Rep. 127. And where the evidence shows that 147 lambs died because of defendant's negligence; that they averaged 77 pounds each, and were worth from seven and one-half to eight cents per pound at the point of destination, it was held that a verdict for $742.00. with interest from date of injury, was justified. N. & W. R. Co. v. Harman, 91 Va. 601. 22 S. E. Rep. 490. See monographic note on “Damages” appended to Norfolk, etc., R. Co. v. Ormsby, 27 Gratt. 455.
2. Evidencie.
Admissibility—Hearsay.—In an action against a common carrier to recover for loss on cattle delayed in transit, the testimony of the shipper as to what his commission merchant reported as the amount of the sales of the cattle is hearsay. The amount of such sales should be shown by a witness who has positive knowledge of the transaction, and the defendant should have an opportunity to cross-examine the witness. N. & W. R. Co. v. Reeves, 97 Va. 284, 33 S. E. Rep. 606.
Sufficiency. —An d in an action against a carrier for injuries to animals through its failure to unload them Cor rest, etc., as required by the Revised .Statutes of the TT. S. i 4386. evidence merely that the car was detained by a storm for hours, is insufficient to show that the failure to unload was caused by a “storm or other accidental cause.” C. & O. R. Co. v. American Exch. Bk., 92 Va. 495, 23 S. 33. Rep. 935.
C. AGAINST CARRIERS OF PASSENGERS.
1. Pleading and Fraction.

a. Form, of Action, Parties, Venue ana Questions for the Jury in General.

Form of Action.—An action on the case in tort may be maintained in any case in which trespass will lie. Therefore it a passenger is wrongfully ejected from a car when he has paid his fare, though no force was used in ejecting him, he may bring an action on the case in tort against the carrier. Barnum v. B. & O. Ry. Co., 5 W. Va. 10; Boster v. C. & O. Ry. Co., 36 W. Va. 318, 15 S. E. Rep. 158; So. Exp. Co. v. McVeigh, 20 Gratt. 264.
Who May Sue or Be Sued.—Where common carriers are not incorporated, any one or more of them may be sued by his or their name or names only, to recover damages for loss or injury to any parcel, package, or person, and such suit shall not abate, Cor the want of joining any of his coproprietors or copartners. W. Va. Code 1900, ch. 108, § 9; Va. Code 1887, § 1297. As to suit against a receiver appointed by a court of equity, see Melendy v. Barbour, 78 Va. 544. Also, see this subject discussed ante, “Actions against Carriers of Goods.”
Venue—Removal of Cause,—Where a railroad company, which was incorporated in another state, leases a railroad lying in this state, and operates the same as owner thereof, any person injured may sue the railroad company in the courts of this state, and such company has no right to remove the suit *388 to the federal court. B. & O. R. R. Co. v. Wightman, 29 Gratt. 431.
Questions for the Jury.—In Va. Cent. R. Co. v. Sanger, 15 Gratt. 230, contractors were employed by defendant railroad company to deliver stone to be used to preserve the track; they placed it in ridges near - the rails, where a train was passing; one of the stones fell upon the track, causing the train tobe derathed, and a passenger, the plaintiff in the case, was injured. As to whether the company had used due diligence to guard against danger, was a question, as held by the court, for the j ury to determine. Carrico v. W. Va. Cent., etc., Ry. Co., 35 W. Va. 389, 14 S. E. Rep. 12.
b. The Declaration.—A declaration against a railroad company for personal injuries alleged that plaintiff had a ticket over defendant’s road, and boarded a freight train, which did not carry passengers, in the belief that the ticket was good on such train; that the conductor refused to stop the train, and ordered him to get off while it was running at a high rate of speed ; and that the conductor, in violent language, threatened to eject plaintiff from the train if he did not obey the order, and had force at his command to execute such threats ; and that upon belief that resistance would result in greater injury than leaving the train, he jumped off and was injured. The court held that there was sufficient allegation of compulsion to excuse plaintiff from the charge of contributory negligence in jumping off. Boggess v. C. & O. Ry. Co., 37 W. Va. 297, 16 S. E. Rep. 525, 23 L. R. A. 777.
Moreover, where a declaration avers that decedent was killed by the oversetting and throwing down of the railroad car in which he was being carried at the time by the defendant as a passenger, and that the oversetting and throwing down of the car were caused by the negligence of the defendant, it is not demurrable on the ground that allegation is too general. Searle v. Kan. & O. Ry. Co., 32 W Va. 370, 9 S. E. Rep. 248.
And in Birckhead v. C. & O. Ry. Co., 95 Va. 648, 29 S. E. Rep. 678, a declaration alleged that a carrier, disregarding its duties, negligently permitted the train on which the plaintiff was a passenger to stand on a track where it was in danger of a collision; that the carrier negligently permitted another train to collide with the train on which the plaintiff was a passenger; and that the carrier had knowledge of the danger in time to stop the other train, and prevent the collision, but fathed to do so; and that the plaintiff was injured. Held, that the declaration described the plaintiff’s cause of action with sufficient particularity.
But in an action for being ejected from a railroad car, it is not sufficient to aver generally that the party was wrongfully ejected, but it must be sufficiently set forth that his expulsion was improper, and wrongful, i. e., being rightfully in the car but illegally expelled. Barnum v. B. & O. R. Co., 5 W. Va. 10.
c. Instructions.—In action for refusal to receive and check plaintiff’s trunk, an instruction is erroneous, which leaves it doubtful whether the occasion alluded to therein as that when plaintiff had not endeavored to deceive defendant, was the occasion mentioned in the declaration, or some other. N. & W. R. Co. v. Irvine, 85 Va. 317, 7 S. E. Rep. 333.
And in Shen. Val. R. Co. v. Moose, 83 Va. 827, 3 S. E. Rep. 796, a passenger who had been suffering from rheumatism of the thigh was thrown from his seat in a car by collision .of the train,- and his leg was broken. In a suit for damages, counsel for the railroad requested the court to instruct the jury that, “Although the jury believe from the evidence that the injury complained of in the declaration was inflicted by the defendant upon the plaintiff, in the manner therein set out, yet the plaintiff is not entitled to recover if they shall further believe from the evidence that he was in a feeble and infirm state of health, and such as would have prevented a prudent man from running the risk of travel; and that but for his diseased and helpless condition the plaintiff would not have suffered the inj ury so inflicted by the defendant.” Such, instruction was properly refused.
So in an action against a railroad company for injuries to passengers caused by the negligence of defendant in allowing stones to be pthed so near the track as to strike plaintiff’s arm, the defence was contributory negligence on plaintiff’s part in allowing his arm to protrude from the window of the car. The court held, that an instruction that plaintiff was entitled to recover if the servants in charge of the train were in a position to see the pthe of stone, or might have seen it by the use of ordinary care, and could thereby have prevented the injury by stopping the train, and fathed to do so; and that it was immaterial whether the servants did see the stones, it being their duty to do so, was erroneous, since it was for the jury to say whether the servants should have seen the stones; and for the further reason that it ignored the evidence of contributory negligence. Carrico v. W. Va. Cent., etc., Ry. Co., 35 W. Va. 389, 14 S. E. Rep. 12.

d. Damages.

When Amount Governed by the Judgment of the Jury.—In actions by passengers against carriers, for injuries sustained, the judgment of the jury as to the amount of the damages, must govern, unless the damages allowed are so excessive as to warrant the belief that the jury must have been influenced by partiality or prejudice, or misled by some mistaken view of the merits of the case. Farish v. Reigle, 11 Gratt. 697.
When Excessive.—But in N. & W. R. Co. v. Lipscomb, 90 Va. 137, 17 S. E. Rep. 809, $500 was held excessive compensatory damages to a passenger who was mistakenly assigned a berth in a sleeping car which was cut off from the main train, and who was thus delayed, and temporarily lost his baggage containing medicines which were required for the proper care of his sick child.
Punitive, Penal and Compensatory, In General.—The terms “punitive,” “exemplary,” “vindictive,” and “penal” damages, are used interchangeably and indiscriminately by some of the several courts, and text writers. Others draw a distinction between damages which are exemplary, and within the discretion of the jury in view of all the circumstances, and “penal” or “vindictive” damages which are defined to be those over and above determinate damages resulting directly, as from a loss of property, or indirectly, as consequential pecuniary loss; and over and above what are termed indeterminate, or those resulting from mental anguish, suffering or humiliation. Determinate damages being in their nature compensatory, the direct and dominant purpose is to make whole the defendant in all respects, as nearly as possible. Yet it is evident that in doing so the defendant is punished and warned as he must be in all cases where damages are recovered against him. Still this punishment comes as an indirect and consequential result, and is, as it were, disregarded, *389 being overshadowed by the chie f object to be effected by the allowance of the recovery, viz.to compensate the person wronged by giving such damages as will be a recompense for actual pecuniary loss, as in case of personal injury, for time lost, medicines and physicians’ bills, and in addition his measure of loss resulting from mental anguish, suffering or wounded feelings. Whereas, if the damages are “penal” or “vindictive,’’ in the sense nsedi by some courts, a sum additional to compensatory, in the most comprehensive sense, is allowed, regardless of extenuating circumstances, merely to inflict punishment upon the wrongdoer Cor his malicious, wanton, vicious or oppressive conduct, and is in no sense compensatory, the chief purpose being to penalize the wrongdoer.
In defining these terms, or in applying the principles to particular facts, these discriminations have not been made in the treatment of this subject. The only distinction made is that between compensatory in its restricted sense, and punitive, which is regarded as covering all damages allowed beyond the extent of the amount necessary to reimburse for actual loss. For a well-considered opinion, which defines these terms, and makes careful and acute distinctions between the several classes of damages, see Pegram v. Stortz, 31 W. Va. 220, 6 S. E. Rep. 485. See also, Minor’s Conflict of Laws, §§ 10, 74,198.
Compensatory and Punitive Damages Defined and Compared.—Actual or compensatory damages are the measure of the loss or injury sustained, while exemplary or punitive damages are something in addition to full compensation, and something given, not as one’s due, but for the protection of the public. The law awards the former where, in the unlawful act, there is an absence of intentional wrong, fraud, or malice, or the act is not oppressively or recklessly committed; while the latter are given where the wrongful act is done with a bad motive, or with such gross negligence as to amount to positive misconduct, or in a manner so wanton or reckless as to manifest a willful disregard of the rights of others. Punitive damages are damages against a person who has wronged another in a wanton, willful, or oppressive manner, in disregard of his rights, as a warning to him and others to prevent them from committing like offences in the future. N. & W. R. R. Co. v. Neely, 91 Va. 539, 542, 22 S. E. Rep. 367 (1895).
Compensatory Damages—When Awarded.—A master is liable to the extent of compensatory damages for the unlawful act of his agent, committed in the course of his employment, whether ratified or not. Thus, a passenger who is unlawfully expelled from a train by the conductor is entitled to recover damages therefor of the company. If the expulsion, though unlawful, did not proceed from any ill motive, and was not rudely or recklessly done, nor in such manner as to show a conscious disregard of the rights of others, and was simply the result of a mistake, only compensatory damages can be recovered, and, on the evidence certified, the plaintiff’s damages should be limited to compensation for the inconvenience, delay, and fatigue to which he was put, and a suitable recompense for the injury done to his feelings, and for being expelled from the train. Norfolk, etc., R. R. Co. v. Neely, 91 Va. 539, 22 S. E. Rep. 367.
Punitive Damages—When Awarded against a Corporation-punitive damages belong alone to actions of tort; they do not lie for breaches of contract. N. & W. R. Co. v. Wysor. 82 Va. 250.
As to the question of recovery of punitive damages against a corporation the rule differs in the several state courts and in the federal court. The supreme court of the United States holds that the question whether a railroad corporation can be charged with punitive damages for the illegal, wanton, and oppressive conduct of the conductor of one of its trains towards a passenger, is a question, not of local law, but of general jurisprudence, upon which the judgment of the supreme court of the United States, in the absence of express statute regulating the subject, is not controlled by decisions of a state court. Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101.
Federal Rule.—The federal court adheres to the rule that a corporation is not liable in punitive damages for injury committed by its servant upon a passenger on the train merely on the ground that the conductor’s illegal conduct was wanton and oppressive. In order to recover punitive damages against a corporation it is necessary to show that the company had knowledge that such servant was unsuitable for the position he occupied, or that the company participated in, approved, or ratified his treatment of the passenger. See Lake Shore & M. S. R. Co. v. Prentice, 147 U. S. 101, and cases cited.
The weight of authority in the several state courts is opposed to this view, and in most of the states the rule is laid down, that a corporation is liable in punitive damages for the malicious and wanton wrongs of its servants, done in the course of its employment. See Spellman v. R. & D. R. Co., 28 Am. St. Rep. 858, 870-883, containing an exhaustive note upon the subject, and quoting a full line of authorities. See also, Lthe’s Notes on Mun. Corp., p. 117 et sea.
West Virginia Rule— In Ricketts v. C. & O. Ry. Co., 33 W. Va. 433, 10 S. E. Rep. 801, it is held that, a railroad company cannot be made responsible for exemplary damages on account of injuries done by one of its servants, even though the act was wanton and malicious, unless the act was expressly or impliedly authorized or ratified by the company. See Downey v. C. & O. R. Co., 28 W. Va. 732.
Virginia Rule.—The position of the Virginia court is uncertain. In N. & W. R. Co. v. Anderson, 90 Va. 1, 17 S. E. Rep. 757 (June, 1893), a passenger was ejected by the conductor under the following circumstances : The passenger’s ticket provided that when presented to the conductor, the passenger should sign his name thereto, and “otherwise identify” himself as original purchaser thereof. The passenger offered to sign the ticket, but the conductor refused this offer, demanded payment of fare, and ejected him because he refused to comply with such demand. The court held that the passenger was entitled to punitive damages but on the ground that the company subseauently ratified the conductor’s acts.
In a later case, N. & W. R. Co. v. Lipscomb, 90 Va. 137, 17 S. E. Rep. 809 (July, 1893), a passenger with his wife and two children, one of whom was very sick, bought a ticket at Bristol, Tenn., for Washington, D. C., and was assured by the company’s officials that a through sleeper was attached to the train. Entering the train he paid for two berths, and was assured by Us conductor that it would go through. Suddenly, without notice to him, the sleeper was cut loose and the train went on carrying the sick child’s clothing and medicine, part of which was lost. The *390 sleeper was left on the track at night when it was too late to get into a hotel or drug store. The jury found that the situation was produced by the negligence of the defendant’s officials, of whom the conductor was one. The court held, in conformity with the rule laid down in the federal court, that the plaintiff was not entitled togpunitive damages. This part of the opinion, however, seems not to have been necessary to the decision. The federal rule was adopted, as it would seem, unhesitatingly, and without reference to or notice of the great weight of conflicting authority.
In N. & W. R. Co. v. Neely, 91 Va. 539, 22 S. E. Rep. 367 (1895), the rule laid down in the Lipscomb Case was approved by the court obiter, namely, that to recover exemplary damages of the master for the tortious act of the servant, the act must have been previously authorized, or subsequently ratified, or the company must have had knowledge of the servant's unfitness. The tendency of these decisions would seem to indicate, however, that the supreme court of appeals of Virginia favors the rule laid down in the federal court. See R., F. & P. R. R. Co. v. Ashby, 79 Va. 130, a case in which punitive damages were held proper. See also, 1 Va. Law Reg. 471, ,620, for articles bearing upon the subject of punitive damages against corporations. See, in this connection, B. & O. Ry. Co. v. Noell, 32 Gratt. 394.
2. Evidence.
Presumption and Onus.—The upsetting of a stage coach is prima facie evidence of negligence. Parish v. Reigle, 11 Gratt. 697. And when injury or damage happens to a passenger by the breaking down or overturning of a railroad train, or the breaking down of a bridge, or wheel, or axle, or by any other accident occurring on the road, the presumption, prima facie, is that it occurred by the negligence of the railroad company, and the burden of proof is on the company to establish that there has been no negligence whatsoever, and that the damage has been occasioned by an inevitable casualty, or by some cause which human care and foresight could notiprevent. B. & O. R. R. Co. v. Wightman, 29 Gratt. 431. See Carrico v. W. Va. Cent., etc., R. Co., 35 W. Va. 389, 14 S. E. Rep. 12.
Furthermore, a plaintiff must be presumed to have been without fault; and if defendant relies on the defence of contributory negligence, he must prove it. B. & O. R. R. Co. v. McKenzie, 81 Va. 71.
And where a train separates, and the separated cars collide so that a passenger is injured, the burden of proof is on the company to show want of negligence. So. Ry. Co. v. Dawson, 98 Va. 577, 36 S. E. Rep. 996.
Admissibility.
Hearsay—Declarations of the mother of an inj ured child passenger immediately after accident, are mere hearsay and no more binding on the estate of the child than would be declarations of a stranger. N. & W. R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454.
When Evidence of Frequently Recurring Accidents Admissible.—And a street-car company, using electricity, is bound to employ the best mechanical contrivances and inventions; and evidence that a particular trolley wire has been the subject of frequently recurring accidents is admissible, as showing that the company had notice of its unsafe condition. Richmond Ry. & E. Co. v. Bowles, 92 Va. 738, 24 S. E. Rep. 388.
Contributory Negligence—Evidence Certified.—But where the evidence, and not the facts, is certified, and the defendant in such action is the exceptor, any evidence it may have adduced, tending to show contributory negligence on the part of the exceptee and contrary to the exceptee’s evidence, must be rejected. Va. Code 1887, § 3484; N. & W. R. Co. v. Groseclose, 88 Va. 267, 13 S. E. Rep. 454.
Damages—Condition of Decedent’s Family.—And in an action against a railroad corporation for the killing of a person, evidence is admissible' to show the condition and circumstances of the family of the deceased, his business qualifications, the condition of his health, the amount he was realizing annually from his employment, the value of his services to his family, and the damage suffered by them in the loss of his care, nurture and instruction. B. & O. R. Co. v. Wightman, 29 Gratt. 431.
Usual Stopping Place.—Moreover, testimony as to what had been the stopping place at a certain station is admissible in an action for personal injuries, when defendant contends that plaintiff was injured whilst alighting from its train before it reached its usual stopping place, while in motion, and the plaintiff denies such contention. A. & F. R. R. Co. v. Herndon, 87 Va. 193, 12 S. E. Rep. 289.
Baggage Checks.—So railway baggage checks are admissible in evidence, in an action to recover for a loss of baggage, to show what the company’s undertaking was. Wilson v. C. & O. R. Co., 21 Gratt. 654.
Weight.
Contributory Negligence—Projection of Arm.—On a question whether plaintiff voluntarily put his arm out of the car window, or whether it was cast out by a lurch of the train, and came in contact with a bridge through which the car was passing, it appeared that the rail on plaintiff’s side was one-half inch lower than the other, that neither the plaintiff nor the other passengers were moved from their seats by the lurch complained of, that plaintiff immediately after the injury said that he got his arm hurt by putting, it out of the car window, and that the top of the car did not touch the bridge, as it must have done in case of a violent lurch, it was held insufficient to show involuntary projection of plaintiff’s arm from the window, and that the verdict in his favor must be set aside. Richmond & D. R. Co. v. Scott, 88 Va. 958, 14 S. E. Rep. 763.
Same—Forcible Ejection.—And in Boggess v. C. & O. R. Co., 37 W. Va. 297, 16 S. E. Rep. 525, 23 L. R. A. 777, a person having a ticket for passage upon a railroad, boarded a freight train which, did not carry passengers, believing the ticket good on that train. The conductor ordered him to get off the train while it was running at a speed which would endanger him in getting off, and refused to stop the train so that he might get off safely, and in violent and insulting language threatened to eject the person from the train by force if such order was not obeyed, and he had force at his command to execute the threat, and as a result, the person jumped from the train to avoid ejection by force. The court held that he was to be treated as a passenger and not as a trespasser; and there was' sufficient compulsion or show of force to excuse the person from the charge of contributory negligence in so j umping from the train.
Speed of Train—Negligence.—But the mere speed of a train, or the fact that it was behind time, when the accident occurred, is not evidence of the negligence of the employees having it in charge. N. & W. R. Co. v. Ferguson, 79 Va. 241.
*391 VII. CRIMINAL LIABILITY.
Violation of Statutory Regulations.—Any common carrier failing to comply with the provision of ch. 55. Va. Code 1887, Pol, Supl. ch. 55, or of the general laws of the state relating to the transportation of freight and passengers by common carriers when not otherwise provided for by such act of the general law, shall for each violation be deemed guilty of a misdemeanor, and on conviction thereof in any court of competent jurisdiction shall be fined not less than one hundred nor more than five hundred dollars.
Embezzlement,—And if any carrier or other person to whom money or other property which may be the subject oi larceny, may be delivered tobe carried for hire, or any other person who may be intrusted with such property, embezzle or fraudulently convert to his own use or secrete with intent to do so, any such property, either in mass or otherwise, before delivery thereof at the place at which, or to the person to whom, they were to be delivered, he shall be deemed guilty of larceny thereof. W. Va. Code 1900, ch. 145, § 20. See. in this connection, Smith v. Com., 4 Gratt. 532; Com. v. Adcock, 8 Gratt. 661.
Packages Fraudulently Opened, and Goods Converted. —But in an action of trespass on the case against a common carrier, if it appear, by a bill of exceptions, to have been proved at the trial, that the defendant fraudulently opened certain packages and casks, being in his care, and belonging to the plaintiff, took therefrom a part of their contents, and converted the same to his own use, but not that the said contents were feloniously carried away, such offence is to be considered as amounting to a trespass only. Cook v. Darby, 4 Munf. 444.